STATE, RESPONDENT, *v.* MOXLEY, APPELLANT.

(No, 2,845.)

(Submitted June 9, 1910.  Decided June 15, 1910.)

[110 Pac. 83.]

*Criminal Law—Receiving Stolen Property—Information—Allegation of Value—Surplusage—Evidence of Other Like Offenses—Admissibility.*

Receiving Stolen Property—Information—Contents.
1.  As in charging the offense of larceny, so in charging that of receiving stolen property, the information must identify the offense by a description of the things stolen, and state the name of the owner, if known.

Same—Evidence—Sufficiency.
2.  Evidence, circumstantial in character, examined, and *held* to have made out a case from which the jury could find the presence of the three elements essential to establish the offense of receiving stolen property, to-wit:  (1) That the property in question was stolen; (2) that the defendant bought or received it knowing it to have been stolen; and (3) that he did so for his own gain or to prevent the owner from regaining possession of it.  (Revised Codes, sec. 8662.)

Same—Information—Variance—Failure of Proof.
3.  In a prosecution for the crime of receiving stolen property, its ownership must be proved as alleged; hence where the ownership, as laid in the information, was jointly in three persons named, and the evidence disclosed that most of the articles belonged to one of them, and the remaining ones to the other two individually, there was such a variance as amounted to a failure of proof.

Same—Allegation of Value—Surplusage—Quantum of Evidence.
4.  An information charging the offense of receiving stolen property need not allege its value; where the value is alleged, the allegation may be treated as surplusage.  The state's evidence need go no further than to show that the property had some value; and where this was done the fact that it failed to establish that the property was worth as much as stated in the information did not furnish any ground of complaint to defendant.

Same—Evidence of Other Like Offenses—Admissibility.
5.  While evidence that accused had been implicated in similar transactions with thieves prior to the commission of the offense for which he was on trial was proper for the purpose of showing guilty knowledge on his part, testimony of such dealings had after that date was inadmissible.

Same.
6.  Testimony that defendant had been guilty of the offense of receiving stolen property on occasions prior to the one for which he was on trial was immaterial in the absence of proof that the property involved in those instances had been stolen.

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

EDWARD MOXLEY was convicted of the crime of receiving stolen property. He appeals from the judgment of conviction. Reversed and remanded for a new trial.

*Mr. John Lindsay,* and *Mr. A. J. Rosier,* submitted a brief in behalf of Appellant. *Mr. Rosier* argued the cause orally.

The general rule of law is that all descriptive matters in the information, although unnecessarily particular, must be proved as laid. (22 Cyc. 48; *State* v. *McDonald,* 10 Mont. 22, 24 Am. St. Rep. 25, 24 Pac. 628; *McAllister* v. *State,* 55 Tex. Cr. 264, 116 S. W. 582.) The ownership of the property must be proved as laid in the indictment. (*Commonwealth* v. *Billings,* 167 Mass. 283, 45 N. E. 910; *Bryan* v. *State,* 54 Tex. Cr. 59, 111 S. W. 1035; *Miller* v. *People,* 13 Colo. 166, 21 Pac. 1025.) On an indictment for receiving stolen goods, if the value of the goods is not proved, a conviction must be reversed. (*Sands* v. *State,* 30 Tex. App. 578, 18 S. W. 86.) Where the pleader. elects to allege in the information the value of the property actually received by appellant, this fact must be proven.

The evidence in this case is purely circumstantial. The law does not permit decisions to be made on remote inferences. (*State* v. *McCarthy,* 36 Mont. 234, 92 Pac. 521; *Dyson* v. *State,* 26 Miss. 362; *Rye* v. *State,* 8 Tex. App. 153; *United States* v. *Ross,* 92 U. S. 282, 23 L. Ed. 708.)

In behalf of the State there was a brief by *Mr. Albert J. Galen,* Attorney General, and *Mr. W. L. Murphy,* Assistant Attorney General. *Mr. Murphy* argued the cause orally.

It is not necessary, in a prosecution under section 8662, a violation of which is charged in the information filed herein, to allege the name of the person who sold the goods, or to prove, upon the trial, that they were unlawfully taken by any particular person. (*People* v. *Avila,* 43 Cal. 196; *People* v. *Ribolsi,*

89 Cal. 492, 26 Pac. 1082; *People* v. *Clausen,* 120 Cal. 381, 52 Pac. 658.)

In *People* v. *Clausen, supra,* the court says that whether the defendant knew that goods were stolen is to be determined by all the facts in the case. It is not necessary that he had heard the facts from eye-witnesses. He is required to use circumspection usual with prudent and considerate persons taking goods by private purchase, and this is eminently the case with dealers who buy at greatly reduced prices. The purchase of goods, however, at an under-valuation, is not, in itself, sufficient proof of guilty knowledge in the buyer that the goods were stolen, and an instruction to this effect would be erroneous, as was held in *People* v. *Levison,* 16 Cal. 99, 76 Am. Dec. 505.

The third specification reaches the admissibility as an exhibit in evidence of the bill of sale, being the record of the transaction kept by the second-hand man for the police department of the city. We think there can be no doubt of the admissibility of this evidence. *State* v. *Clausen,* above referred to, is authority to the effect that failure to enter a description of goods in a similar book, in accordance with requirements of ordinances, can properly be considered as tending to show guilty knowledge, the entry being part of the *res gestae,* and goes so far as to hold that an instruction to that effect is properly given.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, charged by information with the crime of receiving for his own gain stolen property, knowing the same to have been stolen, was found guilty and sentenced for a term of six months in the county jail. He has appealed from the judgment.

The charging part of the information is the following: "That at the county of Silver Bow, state of Montana, on or about the second day of July, A. D. 1909, and before the filing of this information, the said defendant, Edward Moxley, did willfully, and unlawfully, and feloniously, and for his own gain, and to

prevent the owners from again possessing their own property, buy certain carpenter tools (a more particular description of which said carpenter tools is to the county attorney aforesaid unknown), of the value of two hundred and seventy-five ($275) dollars, of the personal property of one E. G. Johnson, Charles Johnson, and C. M. Rude, which had been previously stolen, and the said defendant, Edward Moxley, then and there well knowing the same to have been feloniously stolen,'' etc.     The principal contention made in defendant's behalf is that the evidence is insufficient to justify the verdict.

The evidence introduced on behalf of the state may be summarized as follows: On July 2, 1909, E. G. Johnson, Charles Johnson, and C. M. Rude were employed as carpenters in one of the school buildings in the city of Butte. When they quit work for the day they left their tools, consisting of planes, hammers, saws, levels, chisels, etc., together in a chest or box. On their return on the following morning to resume work, the chest and tools were gone. Some of the tools belonging to E. G. Johnson were stamped with his name. About two weeks afterward Johnson found on exhibition in a showcase in a second-hand store, owned by one Neyman, a pair of pliers which he identified as his. He thereupon, aided by an officer armed with a search-warrant, searched the place and among a great variety of other similar articles found most of his tools. The name had been erased from them. The erasures were apparent. He also found a square belonging to Rude, and two handsaws belonging to Charles Johnson. These articles were all identified by the respective owners as among the lot of tools left by them together in the school building, and were exhibited to the jury. On the morning of July 3 the defendant went to Neyman's place and, finding Neyman's son in charge, told him that he had some tools to sell. Young Neyman told him that he would be down to his house on the next morning to examine them. The store was to be closed the next day because it was Sunday. Neyman went to the place according to agreement, and after some conversation bought the lot of tools for $7.50 and took

them to the store. Since July 4, a legal holiday, fell on Sunday, the store was kept closed on Monday, July 5, also. Early in the morning of the next day the defendant came to the store and there received payment from Neyman, after signing a bill of sale. Dealers in second-hand goods are required by an ordinance of the city to take bills of sale for goods purchased by them, and to furnish copies of them, at the close of the day's business, to the city authorities. The defendant signed the name "John Johnson," designating his residence as "20 West Silver street," whereas he resided at 314 East Mercury street. When Neyman went to defendant's house to purchase the tools, they were all together in a box or chest, which, from the description given by him, was the same one in which they had been left in the school building on July 2. Neyman did not notice a name upon any of the tools. He did not include the box or chest in his purchase. The evidence as to the value of the tools, though not entirely satisfactory, is sufficiently substantial to justify the conclusion that they were all together worth at least $35. None of the witnesses for the state had any knowledge as to how or by whom the tools were taken from the school building, or how they came into the possession of the defendant.

The defendant was examined as a witness in his own behalf. He stated that he had received the tools on June 28 from a man by the name of Thornton, who lived next door to him on Mercury street; that Thornton was employed doing odd jobs in the neighborhood, and on that particular day was engaged at some carpenter repair work for a man by the name of Kipp, across the street; that Thornton had tools of his own; that after Thornton had finished work he came to him and asked for and obtained from him a loan of five dollars, leaving the tools as security; that the tools were then in the chest or box, but, knowing that Thornton had tools worth from ten to fifteen dollars, he did not examine them; that he had previously lent Thornton money on the same tools; that he was sure he received the tools on June 28, because, when Thornton had finished the work for Kipp, Kipp had paid him, taking his receipt which bore that

date, Kipp having shown him the receipt; that on the next day he again saw Thornton, who desired an additional loan of two dollars, which he refused; that Thornton thereupon told him he might keep the tools, inasmuch as he was going away to work in an adjoining county; that the sale was made to Neyman on July 3; that he signed the bill of sale on July 6 as Neyman directed, both as to name and residence; that Neyman knew that he would not sign his own name, and hence the direction to do as he did. He stated further that as soon as he had signed the name to the bill of sale, Neyman complained that he was having trouble about tools, but did not say whether he referred to the tools in question or not. Being asked to explain to the jury why he had written the name "Johnson" when his own name was Moxley, he said: "I didn't want my name along there with a lot of thieves, any more than any of these gentlemen do; that is why I put it there."

It appeared from the testimony of other witnesses that Thornton did reside in the neighborhood of defendant's residence up until the day defendant purchased the tools from him, and that he was engaged in doing odd jobs at carpenter repairing and similar work. Though Kipp was examined as a witness to establish the previous good character of the defendant, he was not asked to produce the receipt referred to by the defendant, nor was he questioned about it. At the time the defendant signed the bill of sale, Neyman was busy and did not notice how it was signed, until he came to make out his report to the city authorities of the purchases made during the day. Neyman had known defendant for some time and knew where he resided.

Section 8662, Revised Codes, under which the information was drawn, declares: "Every person who for his own gain or to prevent the owner from again possessing his own property buys or receives any personal property, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five years or in a county jail not exceeding six months." To make out the substantive offense herein defined and denounced, the evidence must establish (1) that the prop-

erty in question was stolen; (2) that the defendant bought it
or received it knowing it to have been stolen; and (3) that he
did so for his own gain or to prevent the owner from regaining
possession of it.   While the evidence summarized above is en-
tirely circumstantial, we think it made out a case upon which
the jury could properly find the presence of every essential
element of the offense.   (*State* v. *Sparks,* 40 Mont. 82, 105 Pac.
87; *Boyd* v. *State,* 150 Ala. 101, 43 South. 204; *People* v.
*Schooley,* 149 N. Y. 99, 43 N. E. 536; *Licette* v. *State,* 75 Ga.
253; *Gunther* v. *People,* 139 Ill. 526, 28 N. E. 1101; *People* v.
*Pitcher,* 15 Mich. 397; *State* v. *Goldman,* 65 N. J. L. 394, 47
Atl. 641; *Commonwealth* v. *Billings,* 167 Mass. 283, 45 N. E.
910; *State* v. *Gordon,* 105 Minn. 217, 117 N. W. 483, 15 Ann.
Cas. 897.)   It wholly fails, however, to establish the ownership
as alleged in the information.   In larceny it is necessary that
the charge identify the offense by a description of the things
stolen, and their ownership.   The name of the owner must be
stated, if known.   (2 Bishop's New Criminal Procedure, sec.
718.)   So in charging the offense of receiving stolen property.
(Id., secs. 982, 983; *Miller* v. *People,* 13 Colo. 166, 21 Pac. 1025;
*State* v. *McAloon,* 40 Me. 133; *Commonwealth* v. *Finn,* 108 Mass.
466; 34 Cyc. 521.)   The reason of the rule is that the transac-
tion may be so identified that the defendant may, by proper plea,
protect himself against another prosecution for the same offense.
It follows that the ownership must be proved as charged.
(*Commonwealth* v. *Billings, supra; Miller* v. *People, supra;
Brooks* v. *State,* 5 Baxt. (Tenn.) 607; *Bryan* v. *State,* 54 Tex.
Cr. 59, 111 S. W. 1035; 34 Cyc. 523.)

   The ownership laid in the information in this case is jointly
in E. G. Johnson, Charles Johnson and C. M. Rude.   The evi-
dence discloses that all the tools stolen belonged to E. G. John-
son, except two saws identified as the property of Charles
Johnson, and a square belonging to Rude.   The judgment, if
allowed to stand, would not support a plea of former convic-
tion under a charge of having received the tools owned exclu-
sively by either of the Johnsons or Rude.   While, under the

statute (Revised Codes, sec. 9153), a mistake in the name of the person injured is not to be deemed material, if the injury is so described in other respects as to identify it (*People* v. *Leong Quong*, 60 Cal. 107; *State* v. *Green*, 15 Mont. 424, 39 Pac. 322), yet if it is not so identified by the evidence as that it can be said to be the same, there is such a variance as amounts to a failure of proof, and the conviction cannot be sustained. (*State* v. *Mc-Donald*, 10 Mont. 21, 24 Am. St. Rep. 25, 24 Pac. 628; *State* v. *Lee*, 33 Mont. 203, 83 Pac. 223.) If the information had charged the different articles to be the separate property of the respective owners, the information would have come within the rule of *State* v. *Mjelde*, 29 Mont. 490, 75 Pac. 87, and the conviction would have been proper. As it stands, it does not identify the transaction, except by the allegation of joint ownership (the description of the property being entirely omitted because unknown to the county attorney), and hence must be held not to identify with sufficient certainty the transaction which the evidence tends to establish.

The contention is also made that the evidence is insufficient, in that it fails to establish the value of the property as alleged. There is no merit in this contention. The statute does not require the value to be alleged, and it is sufficient to charge the offense as it is therein defined. The penalty does not depend upon the value; hence it need not be alleged. (*People* v. *Rice*, 73 Cal. 220, 14 Pac. 851; 2 Bishop's New Criminal Procedure, sec. 985; 34 Cyc. 521.) Not only so, but it is not necessary that the evidence go further than to demonstrate that the property has some value. (34 Cyc. 529.) The allegation in the information on this subject may be regarded as surplusage.

Contention is made that the court erred in admitting certain evidence as tending to show that the defendant had at other times received other articles which had been stolen, as reflecting upon the question of his guilty knowledge of their character when he purchased the tools in question. It is conceded that evidence of similar transactions prior to July 3 would have been admissible for the purpose for which this was offered; but that.

this was incompetent, because it had reference to transactions subsequent to that date. If such were the fact, the objection ought to have been sustained; for his dealings with thieves after that date would not reflect upon the question whether the defendant had knowledge that he was then dealing with a thief. But it appears that all the transactions referred to occurred during the month of June. The evidence was open to the objection, however, that it was wholly immaterial in that it did not tend to show that any of the articles in question had been stolen. On another trial the evidence should be excluded, unless it is made to appear that the articles were in fact stolen.

The judgment is reversed, and the district court is directed to grant the defendant a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH did not hear the argument, and takes no part in the foregoing decision.