THREE FORETOPS, RESPONDENT, *v.* ROSS, COUNTY TREASURER, APPELLANT.

(No. 5,672.)

(Submitted January 8, 1925. Decided March 27, 1925.)

[235 Pac. 334.]

*Injunction—Taxation of Animals Owned by Tribal Indian Unauthorized, When.*

> 1. *Held,* that horses owned by a tribal Indian which were the progeny of mares secured by his mother in trade for supplies issued to her by the government, and from mares purchased by him with money obtained from a sale of a herd given the tribe by the government, were not taxable, and that an injunction lay to restrain their sale for the collection of the tax levied upon them.

*Appeal from District Court, Big Horn County; Robert C. Stong, Judge.*

ACTION by Three Foretops against R. P. Ross, as County Treasurer of Big Horn County. Judgment for plaintiff and defendant appeals. Affirmed.

---

1. Right of state to tax personalty of Indian on reservation, see note in 14 Ann. Cas. 964.

*Mr. Louis E. Haven,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Ronald Higgins,* Assistant United States Attorney for the District of Montana, for Respondent, submitted a brief and argued the cause orally.

HONORABLE BEN B. LAW, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, delivered the opinion of the court.

This action involves the right of a county to assess, and to seize and sell for nonpayment of taxes levied thereon, certain horses on the Crow Reservation in Big Horn county, Montana, belonging to and in the possession of respondent, an Indian person, a ward of the United States government and a member of the Crow Tribe of Indians.

The assessor for Big Horn county assessed 5,000 head of horses, running at large on the Crow Reservation, to unknown owners. He made no examination of the animals to determine their respective brands, and no effort whatever to properly advise himself as to who might be the owner of the property. The respondent, it appears, was the owner of a number of the animals—about fifty head—assessed and later seized by the appellant, county treasurer of Big Horn county, for the purpose of selling them to enforce the collection of the tax levied.

This action was begun by respondent in the district court [1] of Big Horn county to restrain the county treasurer, appellant, from seizing and selling the animals involved for the nonpayment of the taxes so levied. The case was tried in due course, and the court made findings of fact and conclusions of law to the effect that the respondent was the owner of the horses; that they were raised, kept and grazed upon the Crow Indian Reservation; that they were the progeny of four mares, two of which had belonged to the mother of the respondent, who had obtained them in a trade with the Nez Perce Indians, and two had been purchased by respondent for the sum of

$90 issued to him by the United States government; that the respondent was a ward of the United States government at the beginning of the action; that the assessment made on said horses was invalid, and the seizure by appellant was without authority; and that respondent was entitled to a permanent injunction against the appellant restraining him from selling said horses. Decree was entered accordingly.

Appellant contends that the facts adduced at the trial did not warrant the findings of fact and conclusions of law made by the court.

The respondent testified: "I belong to the Crow Tribe of Indians. I have always lived on the Crow Indian Reservation, and am a member of the Crow Tribe. I am and always have been a ward of the United States government. I get, as a member of the Crow Tribe, annuities of the United States government right along. I have at all times maintained tribal relations."

Bull Don't Fall Down testified: "I am a Crow Indian. I am a member of the tribe here. I am no white man. I am seventy-three years old. I know Three Foretops. I knew his mother when she was living." In addition to the foregoing, it appears that the government, on December 26, 1923, recognized respondent's nativity and tribal relationship by issuing to him a trust patent, under the provisions of the Crow Bill, and delivering it to the superintendent of the Crow Indian Reservation at Crow Agency, Montana.

Concerning his ownership and his means of acquiring the property, the respondent testified: "Originally I inherited those horses through my mother. Part of the herd I bought through another source. My mother out of her share of rations, food, clothing and shirts, traded for a mare and colt with the Nez Perce Indians, while I was quite young, a small boy; but I know of the mare and colt. I saw them at the time they were given to her in the trade. Mother later gave them to me."

Bull Don't Fall Down: testified "Three Foretop's mother purchased two horses from the Nez Perce Indians, a mare and a colt. I happen to know about this transaction, be-

cause we were camped together close to Livingston. We had an issue of coffee, sugar, calico goods, and shirts. Three Foretop's mother took the family issue. They never used the issue much, and she took sugar, coffee, and calico goods and other things over to the Nez Perces, who had worlds of horses.''

Three Foretops testified that several years ago he purchased two mares with his portion of the proceeds of the sale of the I. D. herd, which had been given to the Crow Tribe by the government. The mares originally purchased by his mother, and those later purchased, and their increase, had been bred to stallions issued to the tribe by the government. He had disposed of a part of the animals from time to time, and had about fifty head which he classified as direct descendants of the original purchases. He did not know definitely just how many.

The foregoing evidence, offered by respondent and uncontradicted by appellant, concerning his ancestry and history, does not leave open to controversy the questions as to whether he is a Crow Indian, a member of the tribe, maintaining his tribal relations, or a ward of the United States government receiving his annuities as such from the government.

The respondent's evidence as to how he came into the possession and ownership of the animals is undisputed. The only remaining question, therefore, is whether the property falls within any of the classes exempted by reason of the respondent's status as an Indian and ward of the United States government.

In *United States* v. *Pearson* (D. C.), 231 Fed. 272, it was determined that property purchased with the proceeds of the sale of trust or issue property, and property purchased with money given to Indians by the United States, was exempt from taxation by the states and counties. Respondent's mother acquired her property by an exchange of issue property, given by the government for the support of herself and family. He inherited from his mother the increase of the property thus acquired by her. He purchased two mares with money issued to him by the government as his proportionate interest in the

sale of an Indian herd, issue property to the Crow Tribe. The government issued stallions to the tribe, and the stock in controversy is the increase of the four mares originally so obtained. In *United States* v. *Thurston County, Nebraska,* 143 Fed. 287, 74 C. C. A. 425, it was held that no change of form of the property divests it of the original trust, and that the substitute takes the nature of the original and stands charged with the same trust.

The Enabling Act of February 22, 1889, of the state of Montana, and the Constitution adopted by the state (section 2, Ordinance No. 1), provide that all lands within the state owned or held by any Indian or Indian tribe, until the title thereto shall have been extinguished by the United States, shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of Congress, and that no taxes shall be imposed by the state of Montana on lands or *property* therein belonging to or reserved for its use; the state reserving, however, the right to tax lands granted to Indians who sever their tribal relations, unless specifically exempted by Congress.

In *United States* v. *Rickert,* 188 U. S. 432, 47 L. Ed. 532, 23 Sup. Ct. Rep. 478 [see, also, Rose's U. S. Notes], one of the questions submitted to the court for decision was: Was the personal property, consisting of cattle, horses and other property of like character, which had been issued to these Indians by the United States and which they were using upon their allotments, liable to assessment and taxation by Roberts county? In answering the question the court said: "The personal property in question was purchased with the money of the government and was furnished to the Indians in order to maintain them on the land allotted [to them] during the period of the trust estate, and to induce them to adopt the habits of civilized life. It was, in fact, the property of the United States, and was put into the hands of the Indians to be used in execution of the purpose of the government in reference to them. The assessment and

taxation of the personal property would necessarily have the effect to defeat that purpose."

Judge Sanborn, speaking in *United States* v. *Gray*, 201 Fed. 291, 119 C. C. A. 529, concerning taxation of personal property of Indians, says: "The leases of these lands, * * * the tools, animals, houses, improvements and other property furnished to these Indians by the United States, and the proceeds and income from all these, are the means by which the nation pursues its beneficent policy of protection and instruction and exercises its lawful powers of government." The rule seems generally accepted that the changed forms of the property held in trust, as time brings such changes about in livestock and other personal property of the Indians, even to exchanges between themselves of trust property, are impressed with the trust; even the substituted takes the nature of the original and is charged with the trust, and the authorized sale of trust property by a trustee discharges the property sold from, and charges the proceeds of the sale in the hands of and under the control of the trustee with, the trust.

Bearing in mind the well-established policy of the United States government for the protection, supervision, and control of Indian wards of the government, and the reservation of jurisdiction over Indian tribes and their property, it cannot be successfully contended that the two mares purchased with the respondent's share of the sale of the I. D. herd and their progeny are not trust property, and exempt from taxation so long as he is a ward of the United States government, maintaining his tribal relations.

It may be argued that the mares purchased by respondent's mother with issued property consisting of rations and clothing, do not fall within the rules heretofore suggested. It seems, however, that the government's policy was to permit trafficking of this sort. The evidence establishes the fact that the government furnished stallions to which the mares were bred, and that for a period of more than sixty years this original prop-

erty and its increase has been recognized as trust property, and used for the benefit of respondent, his wife and his mother.

The property being nonassessable, and the assessment thereof being illegal, of course, an injunction will lie to restrain sale for collection of the tax levied.

The findings of the district court were perhaps not sufficient, as contended for by counsel, to support the judgment. However, the evidence was clearly sufficient to justify findings to sustain the judgment rendered, and, this being so, the judgment will be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS, concur.