STATE, Respondent, *v.* HUFFMAN, Appellant.

(No. 6,795.)

(Submitted January 12, 1931. Decided February 9, 1931.)

[296 Pac. 789.]

*Messrs. Guinn & Maddox,* for Appellant, submitted a brief; *Mr. C. C. Guinn* and *Mr. C. A. Spaulding,* of Counsel, argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. F. F. Haynes,* County Attorney of Rosebud County, and *Messrs. Gunn, Rasch, Hall & Guinn,* for the State, submitted a brief; *Mr. Haynes* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Harry Huffman, has appealed from a judgment of conviction on a charge of receiving stolen property and from an order denying him a new trial.

Huffman was charged, jointly with one Thomas Groom, with receiving, from two Indians, certain calves, the property of the United States, with the felonious intent to prevent the owner from again possessing them. Separate trials were granted and, on his trial, Huffman was found guilty and, by the judgment

of the court, sentenced to a term of three years in the state prison.

1. Defendant's first contention is that the court erred in sustaining the state's challenge to juror Lloyd Boslaugh, on the ground of "implied bias" and "on the further ground that he has specifically disqualified himself." Boslaugh frankly admitted that he was a close friend of the defendant but declared that he could disregard the fact and try the case as though defendant was a stranger to him; later he stated that he would like to be excused and, when asked "if you believed he was guilty beyond a reasonable doubt under the law, you would vote to convict him?" answered "No, sir"; and when asked if the reason why he wanted to be excused was, because of his friendship for defendant, he could not consider the case dispassionately and that it would be embarrassing for him to vote to send a friend to the penitentiary, he answered "Yes, sir." On further examination by counsel for defendant, the prospective juror answered "Yes" to such questions as, "You would vote to convict him regardless of the fact that you were friends, * * * you would not allow friendship to influence your verdict, * * * you would be guided solely by the law * * * and the evidence? Declaring that "the prospective juror has answered directly opposite on the respective examinations," the court held that it would be unfair to the juror to require him to sit and that the challenge should be sustained, under section 11959, Revised Codes 1921.

Counsel for defendant assert that the county attorney did not state the correct ground of challenge, if the court was right, as the ground stated, "implied bias," comes within the provisions of section 11960 and, therefore, the court should have denied the challenge under the rule announced in *State* v. *Byrne*, 60 Mont. 317, 327, 199 Pac. 262, and *State* v. *Vettere*, 76 Mont. 574, 248 Pac. 179. The rule relied upon is not applicable to the situation here presented; in those cases this court was called upon to determine whether or not reversible error was committed in denying a challenge not based on proper

grounds. Here we are asked to apply that rule to the action of the court in excusing a prospective juror, although the record does not disclose that an impartial jury was not thereafter obtained. Under the circumstances shown there is no ground for reversal, even though we concede that the court committed a technical error.

The right to challenge is the right to reject, not to select, a juror; no person can acquire a vested right to have any particular member of a panel sit upon his case unless and until such member has been accepted and sworn. Prejudice is not presumed from error and we are commanded by section 12125, Revised Codes 1921, to "give judgment without regard to technical errors * * * which do not affect the substantial rights of the parties." This has been the rule in this jurisdiction since territorial days (*Territory* v. *Roberts,* 9 Mont. 12, 22 Pac. 132; *State* v. *Jones,* 32 Mont. 442, 80 Pac. 1095), and prevails in other Code states (15 Cal. Jur. 410, and cases cited; *State* v. *Seyboldt,* 65 Utah, 204, 236 Pac. 225; *State* v. *White,* 48 Or. 416, 87 Pac. 137; *State* v. *Rodriguez,* 23 N. M. 156, L. R. A. 1918A, 1016, 167 Pac. 426; *Keady* v. *People,* 32 Colo. 57, 66 L. R. A. 353, 74 Pac. 892.)

Further, the trial court is the judge of the weight to be given to the testimony adduced on a *voir dire* examination, and, if the trial court has any doubt as to the existence of such a state of mind as would disqualify a juror, the court should sustain a challenge to such juror in the interest of justice (*State* v. *Russell,* 73 Mont. 240, 235 Pac. 712), and, where a juror admits bias, his subsequent statement that he can consider the evidence impartially should be received with caution, for "even though a juror be biased, he will, it is said, seldom admit inability to act impartially." (15 Cal. Jur. 430, and cases cited.) On the record, we are of the opinion that the court properly exercised its discretion in excusing juror Boslaugh.

2. It is next contended that the court erred in overruling defendant's motion for a directed verdict, in that the evidence

does not show that the defendant either purchased or received the stolen calves.

Two Indians from the Northern Cheyenne Indian Reservation testified that, in the fall of 1929, defendant told them that he would pay them twenty-five dollars a head for all "slicks" they would bring him, but on delivery they were to come to his place at night and not let anyone see them on the road. A "slick" is an unbranded animal. These witnesses confessed to stealing the animals involved in this case; they testified that, on a cold night just before Christmas in 1929, they drove to defendant's house in a truck in which they had the three unbranded calves; that defendant was in bed but arose and dressed, and then said that he could not take the calves as he then had no money, but stated "we will take them over to Groom's." Defendant drove the truck to the Groom ranch where the calves were unloaded, and defendant had a private conversation with Groom during which both men were searching in their pockets "getting money," which was all taken by defendant and paid over to the witness Roundstone. The amount was seventy-five dollars. The evidence is that the calves were worth from forty to forty-five dollars per head. The calves were later taken from the Groom ranch and were found to bear Groom's brand.

The witness Roundstone testified that, on a previous occasion and after defendant's offer to purchase "slicks," he had stolen two calves on the reservation and delivered them to the defendant, who had paid him for them.

The defendant denied that he ever offered to buy "slicks" from the Indians, but testified that he did receive two calves from Roundstone's confederate "Limpy," in part payment on a car, Limpy assuring him that he had a right to sell the calves, as they were from his wife's milk cows. His version of what took place on the night in question was that Roundstone awoke him and told him he wanted to sell him some calves; that he replied that he was not buying any and then Roundstone asked him to go with them to Groom's to help unload

the calves, which he agreed to and did do; that Groom asked if the price was the same, twenty-five dollars per head, and on receiving an affirmative reply, counted out the money and handed it to defendant to count, which he did and then passed it on to Roundstone. As to what took place at his house, defendant was corroborated by a boy, said to have been in bed in the kitchen.

Counsel for defendant assert that, while it is true that the evidence ''might show the defendant Huffman to have been an accessory to the larceny of the animals described in the information, there is no evidence to show that he bought the animals or that he received them.'' In this counsel are mistaken. In the information defendant is charged as a principal, with Groom, in the crime of receiving stolen property. Section 10732, Revised Codes 1921, declares that ''all persons concerned in the commission of a crime, * * * whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission * * * are principals in the crime so committed.''

Taking the testimony of the Indians, believed by the jury, at its face value, while the defendant offered to purchase from them stolen property, he was not present when these particular animals were stolen, and it cannot be said that he either aided or abetted the thieves, although he may have advised and encouraged the stealing of the animals, yet, even though there is no positive evidence that he had any prearrangement with Groom and thus, as a joint operator with Groom, personally received the property, he certainly aided and abetted Groom in securing possession of the animals. If this was done with guilty knowledge that the animals were stolen and with the felonious intent of preventing the owner from again possessing its property, defendant was under the above statute a principal in the crime of receiving stolen property, whether or not he could have been prosecuted for the larceny. The evidence and circumstances surrounding the night delivery of the ani-

mals justify the inference that defendant had that knowledge and harbored that intent, which facts may be established by circumstantial evidence. (*State* v. *Moxley*, 41 Mont. 402, 110 Pac. 83, 85.)

The crime of receiving stolen property defined in section 11388 is a distinct statutory crime, and one who, after the crime of larceny is completed, being present, aids and abets others in receiving the stolen property, with knowledge that it was stolen and with the intent, either for his own gain or to prevent the owner from again possessing the property, is a principal and properly prosecuted as such. (*State* v. *Rechnitz*, 20 Mont. 488, 52 Pac. 264; *Pass* v. *State*, 34 Ariz. 9, 267 Pac. 206; *Grace* v. *State*, 83 Tex. Crim. Rep. 442, 203 S. W. 896; *State* v. *Krupin*, 101 N. J. L. 228, 127 Atl. 270.)

3. However, defendant asserts that the motion for a directed ▬▬▬▬ verdict should have been granted, for the reason that the state failed to prove that the calves were stolen from the United States. Counsel rely upon the statement found in *State* v. *Moxley*, above, that, in this class of cases, the ownership of the property must be proven as alleged, and upon the decisions in *United States* v. *Anderson*, 189 Fed. 262, and *Couture* v. *United States*, 256 Fed. 525, 167 C. C. A. 597. In the *Anderson Case* the trial court held that livestock purchased by the government for Indians with their own money, did not come within the provisions of section 2138, U. S. Revised Statutes (25 U. S. C. A., sec. 214), that "where restricted Indians are in possession or control of livestock purchased for or issued to them by the government, or the increase therefrom, * * * such livestock shall be branded with the ID * * * " and shall not be sold or removed from the Indian country "without the consent in writing of the superintendent or other officer in charge of the tribe to which the owner or possessor of such livestock belongs." The decision is not, however, an authority on the subject, as it was reversed on appeal. (*United States* v. *Anderson*, 228 U. S. 52, 57 L. Ed. 727, 33 Sup. Ct. Rep. 500.)

In the second case, Couture was charged with stealing a

horse, "the property of the United States of America and held in trust for * * * , an Indian under the charge of a superintendent of an Indian Reservation." The circuit court of appeals reversed a judgment of conviction on the ground that there are no common-law offenses against the United States, and that, as the applicable statute, section 47, Penal Code (U. S. Comp. Stats., sec. 10214, 18 U. S. C. A., sec. 100), only provides for punishment for stealing "property of the United States," the trial court was without jurisdiction where the evidence showed that the horse was purchased by the Indian with funds derived from the sale of property he inherited from a deceased child, even though the Indian was a ward of the government; the horse was not "the property of the United States."

In the *Moxley Case* this court pointed out that the property the defendant was charged with receiving was not described, other than by ownership and that the reason for the rule requiring proof of ownership as charged is "that the transaction may be so identified that the defendant may, by proper plea, protect himself against another prosecution for the same offense." Under the facts disclosed, the court declared: "It follows that the ownership must be proved as charged." The court cited section 9153, Revised Codes 1907 (now section 11849, Rev. Codes 1921), to the effect that "a mistake in the name of the person injured is not to be deemed material, if the injury is so described in other respects as to identify it." This section was adopted from California (sec. 956, California Penal Code) and, speaking of the rule announced in the *Moxley Case*, the supreme court of that state has declared that, where the property is otherwise sufficiently described "there exists basis for the application of the rule that, when the reason for the rule ceases, so does the rule itself cease" (*People* v. *Grahle*, 67 Cal. App. 183, 227 Pac. 227, 229), and, under section 960, Penal Code, "proof upon this issue is material only for the purpose of identification." (*People* v. *Mitchell*, (Cal. App.) 292 Pac. 692, 693.)

However, we need not here determine whether the proof was or was not sufficient under the above rules, as the proof was sufficient to prove ownership in the United States of at least one of the calves, beyond a reasonable doubt, and proof of felonious receipt of a part of the property described in an information is sufficient to warrant a conviction. (*People* v. *Fitzpatrick*, 80 Cal. 538, 22 Pac. 215; *People* v. *Wiley*, 3 Hill (N. Y.), 194.) Mack Wolfrobes, a Reservation Indian, positively identified one of the stolen calves as the offspring of a cow run by him on the reservation and branded with the ID and an individual brand belonging to him,—one of the fourteen head of cattle "issued" and "given" to him by the government to start him in the business of raising cattle.

Cattle "purchased with money of the government" and furnished to the Indians "to induce them to adopt the habits of civilized life" are "in fact the property of the United States * * * put in the hands of the Indians to be used in the execution for the purpose of the government in reference to them." (*McKnight* v. *United States*, 130 Fed. 659, 65 C. C. A. 37; *United States* v. *Rickert*, 188 U. S. 432, 47 L. Ed. 532, 23 Sup. Ct. Rep. 478, 482; see, also, *Three Foretops* v. *Ross*, 73 Mont. 6, 235 Pac. 334.)

4. As defendant at least aided and abetted Groom in receiving the stolen property, was personally present and assisted in such receiving, and a finding that he had guilty knowledge and intent to prevent the owner from again possessing its property is justified, he was a principal in the crime (sec. 11863, Rev. Codes 1921) with which he and Groom were jointly charged in the information, there is no merit in the contention that there was a fatal variance between the allegations of the information and the proof.

5. The court instructed the jury that if they found from all of the evidence, beyond a reasonable doubt, that the animals mentioned in the information were the offspring of cattle "issued by the government" to Reservation Indians, were run on the reservation, branded with the ID and an individual

brand of an Indian, and were stolen and removed from the reservation without consent of the proper officers, the ownership of the animals, as alleged, has been established.

"Issued" means "delivered for use" (*Stokes* v. *Paschall,* (Tex. Civ. App.) 243 S. W. 611), and, under the authorities above, there is no merit in the contention that the instruction does not state the law, or that it "singled out certain portions of the testimony in exclusion of others." The court merely stated the law applicable "if" the jury found certain facts proven beyond a reasonable doubt. No error was committed in giving the instruction; it is not such an instruction as was condemned in *State* v. *Pippi,* 59 Mont. 116, 195 Pac. 556, and cases there cited.

6. Defendant contends that the court erred in refusing to give the following instructions: Offered instruction No. 13: "The court instructs the jury that even though you may believe from the evidence that the defendant went with Limpy and Roundstone to the Groom place, at the time the calves in question in this case were delivered to the Groom place, and that money was exchanged between the defendant and Groom, you cannot find the defendant guilty unless you believe beyond a reasonable doubt that the defendant Huffman for his own gain or to prevent the owner from again possessing his own property, bought or received the particular calves described in the information in this case knowing them to have been stolen." Offered instruction No. 14: "The court instructs the jury that it is admitted from the evidence in this case that the brand 'Bar Reverse B 6' on the right side is the brand used and owned by one Tom Groom and that the three animals described in the information in this case now bear that brand. You are further instructed that it is prima facie evidence, unless overcome by other good and sufficient proof, that the animals bearing such brand are the property of the said Tom Groom."

Offered instruction No. 13 ignores the fact that, under the provisions of section 11863, above, defendant might be convicted as a principal if he knowingly and with a common intent aided

and abetted Groom in committing the crime charged; but, whether proper or not, the subject matter of the instruction was sufficiently covered by other instructions given.

As to offered instruction No. 14, it was immaterial what brand was placed on the animals after the crime was committed, or who claimed the ownership of them at the time of the trial; it being admitted that the animals were stolen, the one from the United States and the remaining two either from the government or from Indian wards of the government, the fact that Tom Groom's brand appeared on them at the time of the trial was not even prima facie evidence of ownership in him. No error was committed in refusing to give the offered instructions.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied March 10, 1931.