The STATE OF MONTANA, Plaintiff and Respondent; *v.* WILLIAM WATKINS, Defendant and Appellant.

No. 11824.
Decided Feb. 25, 1971.
481 P.2d 689.

MR. JUSTICE HASWELL did not participate.

Berger, Anderson & Sinclair, Billings, James Sinclair, argued, Billings, for appellant.

Robert L. Woodahl, Atty. Gen., Helena, J. C. Weingartner, Asst. Atty. Gen., argued, Helena, Roy C. Rodeghiero, County Atty., argued, Roundup, for respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

This is an appeal from a judgment of conviction on five counts of receiving stolen property entered on a verdict of guilty by a jury after trial in the district court of the Fourteenth Judicial District, Musselshell County.

Defendant Watkins was initially charged with six counts of receiving stolen property, the same being horses, however count #6 was dismissed during trial.

Don Keith resides at Corcoran, California and raises show and racing quarter horses for sale there and at his leased operation 13 or 14 miles distant at Tulare, California. Count

458

one, two and three allege the receiving of stolen horses named Bar Lay, Kaweah Cholla and Saucy Bar by defendant on or about October 31, 1968, all the property of Don Keith. Count 5 alleged the receiving by defendant of a colt named Saucy Bar Moon on or about November 13, 1968, also the property of Don Keith.

Count 4 alleges the receiving of a horse named Royal Dalton on or about October 31, 1968 by defendant; this horse being the property of one L. L. Tuck who breeds and raises quarter horses at Littleton, Colorado. These horses were alleged to have been stolen from California and Colorado and received by defendant at his ranch near Roundup, Montana.

The state's witnesses testified the horses Bar Lay, Kaweah Cholla, Saucy Bar and Saucy Bar Moon were the property of Don Keith and Saucy Bar Moon was the colt of Saucy Bar and these horses were stolen on the night of October 11, 1968 or the early morning of October 12, 1968. There was no evidence of the identity of the thief or thieves.

Ed Reeves, a painter employed by Keith, testified he saw the defendant at the Don Keith ranch in California where the horses were, in the late afternoon of October 11, 1968. Defendant testified he was not there at that time and produced several witnesses who testified defendant was in the vicinity of Roundup, Montana the following afternoon of October 12, 1968. A witness testified he had telephone conversations with defendant on October 12, 1968 from Roundup and had seen defendant personally on October 13, 1968.

Witnesses established the presence of these horses on defendent's ranch at Roundup, Montana on October 31, 1968.

Tuck and one of his employees testified defendant was on the Tuck ranch in Colorado on October 25, 1968; that defendant was accompanied by a Robert Miller who was a close associate of defendant and also operates a ranch in the Roundup area. Miller, having access to defendant's property, brought numerous horses there and held sales during the

spring and summer of 1968. Royal Dalton was missing and reported stolen in Colorado October 29, 1968. Royal Dalton was also identified on defendant's ranch at Roundup on October 31, 1968. Defendant did not deny being in Colorado on October 25, 1968 and further testified he had seen all of these horses on his property or horses similar to them and assumed they came from Bob Miller's ranch.

The only horse claimed by defendant was the colt identified as Saucy Bar Moon. Defendant maintains that this colt was given to him by Robert Miller for stud fees.

There is a conflict in the testimony which could only be explained by a mistake in identification of the colt inasmuch as defendant claims he received the colt from Miller in August or September, 1968 and if it was in fact Saucy Bar Moon it was not taken from California until October 1968. In any case he denied any knowledge of these horses other than his belief they were Miller's and his source of title to the colt was from Miller.

The defendant presents six specifications of error for consideration by this Court. The first three can be treated together as they concern the element of proof to establish the crime of receiving stolen property. The defendant contends the State must prove beyond a reasonable doubt that the property was stolen by someone other than the defendant. He also contends that the presumption contained in section 94-2704.1, R.C.M.1947, which provides:

*"Possession of stolen livestock as evidence of larceny.* The possession, claim of ownership or control over recently stolen livestock shall be deemed prima facie evidence of guilt of larceny of that livestock unless this presumption is rebutted or contradicted by other credible evidence."

was not overcome by the State and hence the evidence invokes the statutory presumption, supra, that the defendant is guilty of the theft of the animals which bars the conviction under the receiving stolen property statute.

The defendant relies on State v. Gilbert, 126 Mont. 171, at page 174, 246 P.2d 814, at page 816 (1952) as principal authority to establish his position that the State must prove theft by someone other than defendant by the following language of the Montana Supreme Court:

"A necessary and essential element of the crime of receiving stolen property is that of establishing beyond a reasonable doubt that the stolen property be stolen by someone other than the defendant."

The Montana legislature imposed no such burden on the State in section 94-2721, R.C.M.1947, which defind the crime as follows:

*"Receiver of stolen property.* Every person who for his own gain or to prevent the owner from again possessing his own property buys or receives any personal property, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five (5) years or in a county jail not exceeding six (6) months; and it is presumptive evidence that such property was stolen if the same consists of jewelry, silver or plated ware or articles of personal ornaments, brass, bronze or copper fixtures, fittings or parts of machinery, or electrical supplies, or what is commonly termed junk, if purchased or received from a person under the age of twenty-one (21) years unless said property is sold by said minor at a fixed place of business carried on by said minor or his employer."

Additionally, the case law until *Gilbert* in 1952 imposed no such burden, see State v. Moxley, 41 Mont. 402, 110 P. 83 (1910); State v. Sim, 92 Mont. 541, 16 P.2d 411 (1932); State v. Keays, 97 Mont. 404, 34 P.2d 855 (1934).

As a practical matter the *Gilbert rule* seems to be an expression of the Court's concern that the defendant be protected from the possibility of being charged for both crimes arising out of a single theft and created a burden on the State that rendered the receiving statute almost nugatory.

The Court in 1965 in State v. Peters, 146 Mont. 188, 405 P.2d 642, while examining the sufficiency of the information and proof required at trial, by implication overruled *Gilbert* and reinstated the rule before *Gilbert* in the following language:

"This court has long recognized that the substantive elements of this offense [receiving stolen property] which must be alleged in the information and established at the trial are: (1) that the property in question was stolen; (2) that the defendent bought it or received it knowing it to have been stolen; and (3) that he did so for his own gain or to prevent the owner from regaining possession of it."

With this we agree and reverse anything stated to the contrary in State v. Gilbert 126 Mont. 171, 246 P.2d 814.

With the clarification of this rule we do not in any way disturb the doctrine that is set forth in State v. Webber, 112 Mont. 284, 116 P.2d 679, wherein the Court, faced with an accessory in stealing a calf and thereby a principal under section 94-2721, R.C.M.1947 and charged with receiving stolen property, established the defendant could be charged with either crime but not both in the following language:

" 'The difficulty comes in where the actual thief was aided by the accused in the commission of the crime, and as to this the rule, it seems to us, has been stated by the Supreme Court of Ohio: "We see no reason, however, why a confederate of the thief may not be guilty of both receiving and concealing the property which the latter has stolen; and it appears to be an established rule that a prosecution for receiving or concealing stolen property may be maintained against one who was present, aiding in the commission of the larceny, and receiving the property from the principal." '

"Larceny and receiving stolen property are under our statutes separate and distinct crimes and where as here the evidence shows the defendant guilty of both crimes, we think

it is optional with the state to prosecute the offender for either."

It will also follow that if a defendant is charged with larceny of the livestock, rather than receiving stolen livestock, the legislature has seen fit in the larceny section of the law to enact section 94-2704.1, supra, entitled *"Possession of stolen livestock as evidence of larceny"* which is a special evidentiary presumption to aid in the prosecution of livestock theft cases. This presumption must be overcome by the defendant in these cases of livestock theft.

This presumption is specifically c o n f i n e d to cases brought under section 94-2704.1, R.C.M.1947, and in no case carries over as a burden for the State to overcome in the prosecution of receiving stolen livestock cases.

The defendant argues the evidence to be insufficient to support the verdict, relying on his interpretation of the elements of proof and statutory presumption discussed. In view of the holding of this Court, this argument would now be moot.

By specification of error No. 4 defendant contends that the testimony of Dr. Maderious from his notes was error because this testimony was received without first laying the proper foundation; that the defendant was prejudiced by the doctor's identification of the colt, Saucy Bar Moon, the only animal claimed by defendant and being the colt defendant testified he received from his associate Miller for a stud fee. This would concern count No. 5 of the information.

The error claimed is attributed to the following testimony after the doctor testified he had worked for the past three years on a regular basis for horse owner Keith in California during breeding time; on call throughout the balance of the year and during breeding time, January 15 to August 1; would call at the ranch over three times a week; was familiar with Keith's horses, particularly Bar Lay, Kweah Cholla, Saucy Bar and Saucy Bar Moon; and was at the time in question being examined from a picture, exhibit #1, already admitted

as the identification of Bar Lay, the animal alleged to have been received in count No. 1 of the information.

"Q. I show you Plaintiff's Exhibit #1, can you identify that particular horse?

A. Yes, this is a mare, Bar Lay.

"Q. And I show you, have you seen that horse before? A. Yes, many times.

"Q. Where did you see that horse? A. I have seen her on many occasions at the Don Keith ranch or at the Keith-Bell ranch.

"Q. And have you ever treated that particular horse? A. Yes, on several occasions.

"Q. During which period? A. Do you mind if I refer to my notes?

"Q. Yes, you may.

"MR. SINCLAIR: What exhibit is he looking at?

"MR. RODEGHIERO: #1.

"A. What was your question again, sir?

"Q. Can you give the jury some kind of indication of how many times you have treated the horse, Bar Lay, and during which period?

"MR. SINCLAIR: Might I interject, Your Honor. Let the record show he is referring apparently to some notes. The prosecuting attorney has laid no proper foundation for the use of these notes.

"THE COURT: Well he informed me he couldn't remember without his notes, overruled.

"A. I treated Bar Lay on a total of 15 different occasions since early 1968. I will say this, these notes, they have been referred to here, are my own ledger sheets which I use primarily for billing purposes and for records of treatment and examination notes and so on. An entry will appear on these ledger sheets only if the treatment or examination was significant or important enough or large enough to warrant me making a charge.

464

"MR. SINCLAIR: I move to strike that last portion of the answer as not responsive to the question and ask that the jury be instructed to disregard it.

"THE COURT: It will be stricken and the jury will disregard it."

Thereafter the doctor made a physical identification of each California horse from a picture exhibit, including the colt Saucy Bar Moon, the subject of Count 5 of the information. When the doctor consulted his notes to determine specific dates he had seen the colt and its mother, Saucy Bar, which resulted in a birth date being established, there was no objection placed by the defense to any of the identification testimony offered in relation to Count 5 of the information, this being the portion of the testimony wherein prejudice is claimed.

Additionally, the defense cites for authority on foundation, Marron v. Great Northern Ry. Co., 46 Mont. 593, 129 P. 1055 (1913), wherein record books kept by a Great Northern employee, without independent recollection, were refused by the trial court for want of foundation. This is not our case.

■■ Foundation is addressed to the trial judge, not the jury, and it is within his discretion under section 93-1901-6, R.C.M.1947, to determine whether to permit the witness to refresh his memory and it depends on the circumstances of the particular case and reversible only on abuse. Further, if prejudice is alleged it will not be presumed in a criminal, case but must show from the record a denial of a substantial right. State v. Gallagher, 151 Mont. 501, 445 P.2d 45 (and citations).

In addition to no objection to Count 5, the witness volunteered foundation material after objections in Count 1 and defense had it stricken; the records were produced and defendant failed to question the witness or examine as is his right under section 93-1901-6, R.C.M.1947. There appears no abuse of discretion and no denial of a substantial right resulted in any case inasmuch as three witnesses made strong physical

identification of this colt and Robert Walton, an employee of Mr. Keith, identified the colt and further testified he had known the colt since it was 2 days old, being born late May 1968 on the Keith ranch in California.

In specification No. 5 the defendent contends that while Mr. Tuck (Colorado horse owner) was testifying as to the time and place of the theft of Royal Dalton, which defendant was charged with receiving in Count 4, it was error when he was allowed to answer how many horses were stolen at the same time and defendant claims it is evidence of other and separate crimes. We think not. Defendant's own citations draw the distinction between separate crimes and the exception to the rule concerning crimes so linked together in time and circumstances that one cannot be fully shown without proving the other; see also State v. Jensen, 153 Mont. 233, 455 P.2d 631 (1969). We feel the present situation is well within the recognized limitations of the accepted rule.

The defendant alleges error in specification No. 6 because of remarks by the State during final argument which indicated personal feeling of guilt by the county attorney and other undignified remarks.

As pointed out for reversible error in a criminal case it must be established that there was a denial of a substantial right of the defendant as a result of an alleged error. We cannot find this indiscretion of such weight. Further, the Court instructed the jury they were not to consider remarks made by counsel during the course of the trial.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and CASTLES, concur.

MR. JUSTICE HASWELL did not participate in this case.