STATE OF MAINE
*vs.*
MILTON DOUGLAS

Piscataquis.   Opinion, March 16, 1955.

*Matthew Williams*, for State.

*Bartolo M. Siciliano*, for respondent.

SITTING: FELLOWS, C. J., WILLIAMSON, TIRRELL, WEBBER, BELIVEAU, TAPLEY, JJ.

TIRRELL, J.   At the September Term 1954 of the Superior Court held in the County of Piscataquis three *indictments* for indecent liberties were returned by the Grand Jury against one Milton Douglas. The indictments were numbered 691, 692 and 693 on the criminal docket for the County of Piscataquis. We use the word *indictments* advisedly, meaning to set forth the presentation of three separate

charges against this same respondent, and for no other reason. Examination of the indictments in each case shows no irregularity.

To indictment No. 693 the respondent plead *not guilty* on the second day of the Term. On the following day the respondent filed a motion for continuance of the cause for the reason that certain witnesses, whose testimony was alleged by him to be material and necessary, were unavailable and not subject to subpoena. This motion was granted by the presiding justice.

At the same time the respondent was arraigned on the other two indictments, namely No. 691 and No. 692. His plea to each indictment was *not guilty*. These two cases were also continued by the presiding justice.

On the fifth day of the Term the respondent filed a motion to be permitted to withdraw his plea made to each of the aforesaid indictments for the purpose of suggesting to the court that the indictments were not true bills and were void and invalid in that no lawful admissible evidence had been submitted or presented to the grand jury which returned the indictments, and for the purpose of suggesting to the court that the finding of the true bills against the respondent was an abuse of power by the grand jury.

Each of the said motions was denied by the presiding justice to which ruling exceptions were seasonably taken by the respondent and on which exceptions the matter is now before this court.

Following is the bill of exceptions:

### Respondent's Bill of Exceptions

The respondent excepts to the rulings of the Presiding Justice of the Superior Court denying respondent's petitions to withdraw his plea in each of the above entitled causes, for the following reasons:

## Exception No. 1

That on all of the evidence and testimony in the cases it is claimed that the ruling of the Presiding Justice denying respondent's motions to retract his plea to each of the indictments returned against him, to wit, Number 691, number 692, and number 693, each entitled State of Maine vs. Milton Douglas, at the September 1954 Term of the Superior Court for Piscataquis County was error as a matter of law for the reason that such denials, and each of them, were an abuse of judicial discretion.

The aforesaid indictments, pleas thereto, motions for continuance filed on behalf of the said respondent, motions to withdraw the said respondent's plea to the said indictments, the transcript of the record, the evidence and testimony given in said cases, the ruling of the Presiding Justice, the respondent's exceptions to the rulings of the Presiding Justice, the docket entries and all other records in the aforesaid cases are made a part hereof and incorporated into this Bill of Exceptions with the same effect as if set forth herein at length. To all of which rulings and refusals to rule, including the denial of the motions to withdraw respondent's plea to each of the aforesaid indictments, the said respondent excepts and says that he is aggrieved and prejudiced thereby and prays that his exceptions may be allowed.

We do not, of course, pretend to nor are we allowed to go outside of the bill of exceptions. However, in this case it is our opinion that all of the minor exceptions reserved by the respondent are directly stated and set forth in the bill of exceptions, and it was said by the attorney for the respondent in oral argument that his one exception was the refusal of the presiding justice to allow the original plea to be withdrawn, and that being so, did the presiding justice abuse his discretion?

The ruling we are about to announce has been so universal in this State that our Reports are practically bare of any decisions thereon. To change this rule and to open up the fact of inquiry into grand jury proceedings would open the door to abuse in this court whereby this court would eventually find itself a fact finding body rather than a court of law. In other words, this court is not, as one might say, the headwaters from which the smaller streams and brooks flow, and it cannot be used as a fishing ground by the fisherman who has failed to find or capture his fish in the smaller streams or brooks.

Before quoting any law upon the particular subject it is well to say that the presiding justice in the lower court preserved any and all rights which the respondent may have claimed at that time to have. In an endeavor to see that the respondent's rights were not possibly invaded the presiding justice held an informal hearing before ruling on the motions.

At this hearing Mr. Packard, being the foreman of the grand jury, testified under oath as did a Mrs. Brown, a member of the grand jury. Mr. Packard testified that on all three of these indictments, namely 691, 692 and 693, twelve or more grand jurors voted to return them. Mrs. Brown, one of the grand jurors as aforesaid, testified in answer to a question by Mr. Siciliano that there were other persons before the grand jury. At this time the presiding justice interposed, "There were police officers who testified in this case?" and the answer of the witness was "Yes." The presiding justice also asked Mrs. Brown, "Was there a document evidence in the case, documentary evidence?" and her answer was, "Yes. Papers."

In Maine Reports we find only one case bearing in any manner upon the subject which we are discussing. This is Low's Case, 4 Me. 439, at page 453, in which Preble, Justice, states as follows:.

"*But it must be* remembered, that the indictment being in due form indorsed as a true bill, by the foreman, the inference is that the fact is not as the defendant states it to have been; - an inference not to be controlled by vague, uncertain, or doubtful testimony. He will therefore be held to make out his case, to the *entire satisfaction of the court, so as to leave no doubt on the subject.*" (Emphasis supplied)

In the case of *Mack* v. *State of Indiana,* reported in 83 A. L. R. 1349, at page 1355, it is said:

". . . . it is conclusive evidence of the regularity of the finding and it is not competent to inquire into the amount or kind of evidence upon which they acted."

Also, 27 *Am. Jur.* 715, Sec. 166:

"It is a well-settled rule in some jurisdictions that a grand jury ought not to receive any but legally competent evidence, and in some of the states this rule has taken statutory form, but such statutes have been held to be directed to the *grand jury* rather than to the *courts.* It is the majority rule that the law does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury to determine whether it was in whole or in part competent and legal. This has been held to be the rule under statutes limiting the evidence which the grand jury can receive to evidence given by witnesses produced and sworn before them, and to legal documentary evidence, and stating that they can receive none but legal evidence and the best evidence in degree, to the exclusion of hearsay or secondary evidence. This view is based, by the courts adhering to it, on one or more of the following reasons: that the grand jury is a judicial body whose finding, properly presented to the court and duly indorsed as a true bill, is conclusive as to the regularity of the finding; that the secrecy of grand jury proceedings will not be invaded; and that a statute prescribing

grounds for the quashal of indictments, and not mentioning insufficiency of the evidence, is conclusive. It has been held that failure of a grand jury to observe a statute directing that it shall receive none but legal evidence does not afford grounds for quashing an indictment. In a minority of the jurisdictions, however, it is the rule that the court may inquire into the legality of the evidence before the grand jury, and if it is found to have been plainly illegal and incompetent as a whole, the indictment may be quashed. This practice finds some support, inferentially, in the cases holding that an indictment cannot be quashed merely on the ground that there was some illegal evidence before the grand jury, where there was also other and legal evidence, . . . ." (Emphasis supplied)

In the case of *Joseph Blowe, Appt.* v. *State of Mississippi,* 24 A. L. R. 1429, at page 1431, it was stated:

"There is a division among the authorities elsewhere on this question, but the weight of authority as it appears is to the effect that, in order to determine whether an indictment was legally found, no inquiry whatever will be gone into as to whether the evidence before the grand jury was either competent or legally sufficient."

and in 31 A. L. R. at pages 1479, 1480, 1481, 1482, 1483, 1484, see particularly *State* v. *Boyd,* at page 1481:

"Though the indictment was found on incompetent secondary evidence, the courts are not authorized to inquire into the sufficiency of the evidence on which the grand jury acted."

We are aware of the fact that in some cases the rule as laid down above has been altered or changed by reason of provisions in state constitutions or by statute. However, this state has never adopted any constitutional or statutory authority concerning the same.

The presiding justice had discretionary powers as to matters of continuance or withdrawal of plea, and we are of the

opinion that in no instance has the respondent shown that the presiding justice has abused that discretion.

The exception in each case is overruled.

The docket entry in each case must be

*Exception overruled.*