THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.*
ROY L. PETERS, DEFENDANT AND APPELLANT.

No. 10916
Submitted June 7, 1965. Decided August 20, 1965.
Rehearing denied October 1, 1965.
405 P.2d 642

Raymond E. Dockery, Jr., Lewistown, John M. McCarvel (argued), Great Falls, for defendant and appellant.

Forrest H. Anderson, Atty. Gen., Peter L. Rapkoch, County Atty. (argued), Leonard H. McKinney, Deputy County Atty., Lewistown, Alfred B. Coate, Asst. Atty. Gen. (argued), Helena, for plaintiff and respondent.

MR. JUSTICE JOHN CONWAY HARRISON delivered the Opinion of the Court.

Defendant Roy L. Peters appeals from a conviction of the

crime of receiving stolen property, and from the denial of a motion for a new trial.

On April 14, 1964, the Fergus County Attorney made a motion for leave to file an information charging defendant, hereinafter called appellant, with the crime of receiving stolen property. The motion alleged that on or about September 21, 1963, appellant knowingly received fifty head of stolen unbranded calves from Arnold Allen. The court signed the order granting leave to file the information and it was filed the same day. In addition to the offense which allegedly took place on September 21, 1963, the information also set forth three separate and distinct offenses of the same class: the second count charged appellant with receiving six head of stolen unbranded calves from Joe Cochran on October 22, 1963; the third count charged appellant with receiving twenty-eight head of stolen unbranded calves from Basil Long Fox on November 2, 1963; and the fourth count accused appellant of receiving twenty-eight head of stolen unbranded calves and one yearling from Basil Long Fox on November 6, 1963.

On April 16, 1964, appellant appeared for arraignment with his attorney, waived the statutory time for entering a plea, and pled not guilty to the charges.

At the trial, State's witness Arnold Allen testified that he met appellant, a rancher, in August of 1963, in Jerry Johnson's bar in Roy, Montana. On that occasion, he, Allen, agreed to sell some unbranded calves to appellant and Jerry Johnson. Allen told them that he would steal the calves from nearby Indian Reservation land. The agreed price was $50 per head. Allen testified that subsequently he made seven nighttime deliveries of calves to appellant's ranch, and after each delivery he went to Johnson's bar in Roy where he was paid cash for the number of calves delivered.

Allen further testified that on September 21, 1963, he gave appellant and Johnson a bill of sale for fifty calves to be delivered by October 15, 1963. However, he testified that he

only delivered forty-four calves, receiving a total of $2,200 from Johnson. The bill of sale, introduced into evidence, was made out for $3,750 but Allen testified that this figure was not on the bill when he signed it.

The sheriff of Fergus County, George Stephens, testified that in March, 1964, while he was investigating a report that calves had come into the county without inspection he was informed that appellant had more calves on his ranch than cows, and that the calves were whitefaced although all appellant's cows were black. The sheriff, accompanied by stock inspectors, went to appellant's ranch to investigate. Appellant permitted examination of the calves, stating that he had four bills of sale to prove his ownership. All the calves had been branded with a brand registered to appellant and Johnson. After clipping the calves, the examiners found another brand, identified as belonging to W. D. Rankin, on one of the calves.

At the end of the State's case-in-chief, the court granted appellant's motion to dismiss counts two, three, and four from the information on the grounds of failure of proof. In the second count, appellant was accused of receiving stolen calves from Joe Cochran. Prior to appellant's trial Cochran had signed a statement admitting that he stole six unbranded calves and delivered them to appellant. However, at the trial he testified that he had legitimately purchased them and made a bona fide sale to appellant. The third and fourth counts of the information were founded upon an alleged receiving of stolen calves from Basil Long Fox. At the trial, the sheriff testified that a subpoena had been issued for his appearance but that Long Fox could not be located.

Jerry Johnson, owner of the Roy bar, who was also charged with receiving stolen property, admitted that he financed the sale of the calves from Allen to appellant, but denied having knowledge that they were stolen. Johnson testified that he agreed to loan appellant the money to purchase the unbranded calves, that the agreed price was $75 per head, and that fifty

calves were to be delivered. Johnson would pay out the money as the calves were delivered. He testified that he had known Allen for several years, assumed that he was in the cattle business, and that transactions involving unbranded calves were not uncommon in the community. Johnson further testified that Allen told them that he owned the calves.

Appellant also testified that Allen told them that he owned the calves. He contradicted most of Allen's testimony, testifying that there were only three deliveries made to his ranch and only one was at night. He further testified that he had made no attempt to conceal the calves on his ranch, and that he did not notice the Rankin brand when he branded the calves. Appellant gave Johnson a note for $8,000, which included the amount Johnson had loaned him for the calves.

The jury found appellant guilty of the crime of receiving stolen property from Allen, and the court sentenced him to five years in the state penitentiary, with four years suspended. The court denied appellant's motion for a new trial.

Appellant has set forth twenty-three specifications of error which can be consolidated into the following arguments:

(1) That appellant was prejudiced by the filing of the information;

(2) That the record does not disclose appellant's presence during legal arguments in chambers at the trial;

(3) That venue was not proven;

(4) That the court erred in admitting certain evidence;

(5) That the State did not allege ownership of the stolen calves, or that ownership was not known;

(6) That the calves were seized in violation of appellant's constitutional rights; and

(7) That the court erred in failing to give certain instructions and permitting certain exhibits to go to the jury. Each of these arguments will be considered seriatim.

Appellant's first contention is that he was prejudiced

by the information containing three counts which were not set forth in the motion and order for leave to file the information. The motion and order accused appellant of receiving stolen calves on September 21, 1963, but the information included three additional separate and distinct offenses of the same class as provided by R.C.M.1947, § 94-6407.1. Appellant argues that he was prejudiced because the complete information was read to the jury although the application for leave to file, the order, and the court's records do not show that there was probable cause for including the additional counts in the information.

Pursuant to R.C.M.1947, § 94-4911, the court's order may (1) grant leave to file an information, or (2) require a preliminary examination. The alternative procedures assure the accused's protection by requiring a judge to determine the existence of probable cause as a prerequisite to the filing of an information and the arrest of a defendant. The first procedure, application or motion for leave to file an information, is most commonly followed in Montana. (See 25 Montana Law Review 135 (1963).) This court has consistently held that leave to file is not a mere perfunctory matter, and that it must not be automatically granted. Sufficient facts must be presented to move the court's discretion to grant leave. State ex rel. Juhl v. District Court, 107 Mont. 309, 84 P.2d 979, 120 A.L.R. 353 (1938). However, these facts do not have to be embodied in the application. An oral discussion of the facts constituting probable cause, accompanied by a written motion signed under oath, fulfills the statutory requirement: State v. Kacar, 74 Mont. 269, 240 P. 365 (1925) ; State v. Martin, 29 Mont. 273, 74 P. 725 (1903). Appellant does not contest the validity of the information with respect to count one, the count upon which he was convicted, for facts sufficient to establish probable cause were set forth in the motion and order.

It should be noted that at the time of the request for a motion for leave to file the information the county attorney had prepared and handed to the judge the information which set

forth the four counts, that the judge had an opportunity to examine and approve or disapprove the information and that in granting the motion for leave to file he immediately granted and approved the filing of the information. Therefore, it was the information itself, not the motion for leave to file, that is the informative pleading and the notification to the appellant of the nature of the charges against him, and it is unnecessary in a multiple count information to put all of the counts in a motion for leave to file, for the sole purpose of the motion is to show the presiding judge that probable cause exists to issue the warrant and information.

Here the appellant waived any claimed irregularity by failing to move to strike those counts from the information or to request a preliminary hearing. Section 94-6407.1 permits the county attorney to file an information charging "two or more different offenses of the same class of crimes or offenses, under separate counts." However, appellant must affirmatively assert his timely objections. Here, under R.C.M.1947, § 94-6601, appellant should have moved to set aside the information on the ground that leave to file had not been granted with respect to the three separate counts. By failing to do this, appellant waived the objection R.C.M.1947, § 94-6602. As this court said in State v. Vinn, 50 Mont. 27, 32, 144 P. 773, 775 (1914): "* * * by entering his plea without a written motion to set aside the information and consenting to go to trial, the defendant waived his right to question the propriety of the prior proceedings.

Appellant next contends that the lower court erred by not requiring his presence at the trial: In chambers, during testimony of the State's first witness, when appellant's attorney made a motion to refuse further testimony on grounds that the information was fatally defective; in chambers, at the close of the State's case-in-chief, when his attorney moved to dismiss the information for failure of proof; and in the courtroom, after the jury had returned their verdict, when his attorney

argued a motion for a new trial. Appellant contends that his absence from hearings on these motions deprived him of his right to be personally present at his trial as required by R.C.M. 1947, § 94-7004.

The right of an accused criminal defendant to be present at his trial is expressly guaranteed by the Montana Constitution and Code provisions. Our Constitution, Article III, § 16, provides that: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel;" and R.C.M.1947, § 94-7004, requires that the defendant must be personally present at the trial. In State v. Spotted Hawk, 22 Mont. 33, 45, 55 P. 1026, 1028 (1899), Chief Justice Brantly stated that the "word 'trial,' when used in connection with criminal proceedings, *means proceedings in open court * * *. It includes all those steps in the trial during which the defendant may be of assistance to his counsel in conducting the proceedings.*" (Emphasis added.)

Here, the arguments in chambers on the motions to exclude further testimony and to dismiss the information involved questions of law. It is doubtful that appellant could have assisted his counsel at the presentation of these motions, and any knowledge of facts possessed by appellant, but not by his attorney, would have added nothing to the attorney's legal arguments. "[T]he right of a defendant to be present when the triers of fact are absent is not an absolute right, but one qualified by a condition that nothing occurs when he is not present which could put him in jeopardy." People v. Teitelbaum, 163 Cal. App.2d 184, 329 P.2d 157, 172 (1958).

Our review of the proceedings reveals that appellant was well represented on these occasions, and if present would have been a mere spectator. In a similar situation, this court held that a criminal defendant was not prejudiced by his absence during settlement of instructions, for that stage of the trial was "nothing more or less than the determination of questions of law." State v. Hall, 55 Mont. 182, 187, 175 P. 267, 269 (1918).

The California court has construed identical constitutional and statutory provisions to hold that a defendant need not be present in chambers during arguments on matters of law. What the California court said in People v. Teitelbaum, supra 329 P.2d at 173, applies with equal force here: "Appellant has failed to point out any occurrences had out of his presence which in any way affected him adversely and our own study of the record convinces us that his rights were not substantially impaired. As a matter of fact the appellant was not excluded * * *. His absence was of his own volition and not by reason of any action of the court and by failing to personally assert, or to assert through his counsel, his desire to be present, he waived his right to be present."

We therefore hold that a defendant's constitutional and statutory right to be present at trial does not encompass proceedings before the court involving matters of law. Such rights are violated only if the defendant is prevented from being personally present when the jury is hearing his cause, or is prevented from attending such other proceedings where his presence is essential to a fair and just determination of a substantial issue.

Appellant's argument that the court erred by not requiring him to be present at the hearing on the motion for a new trial is likewise without merit. The Montana Constitution and statutory provisions discussed above do not require that appellant be present at a hearing on a motion for a new trial because such a hearing is held after the verdict has been rendered and is not part of the trial. This view is followed by the majority of jurisdictions. See Anno. 69 A.L.R.2d 835, and Lester v. State, 212 Tenn. 338, 370 S.W.2d 405 (1963).

We find no merit in appellant's argument that the State failed to prove that the crime was committed in Fergus County. After carefully reviewing the transcript, we find there was sufficient evidence presented to establish venue. Arnold Allen, when questioned by the County Attorney, testified.

"Q. And where did you deliver these calves? A. To the Roy Peters ranch.

"Q. And where is that ranch? A. I think it is east of Roy.

"Q. Do you know whether it is in Fergus county or not? A. No, I don't."

Joe Cochran also testified as to the location of the Peters ranch:

"Q. Where was that that you met him? A. At his ranch the other side of Roy.

"Q. East of Roy? A. Yeah.

"Q. Do you know what county that ranch is in? A. In Lewistown, I guess.

"Q. Do you know whether it is in Fergus County? A. It must be if it is in Roy, ain't it?"

Appellant testified that his ranch was located "Twelve miles just about due east" from Roy. And during the State's rebuttal Arnold Allen further testified:

"Q. There has been some discussion, Arnold, about previous sales by you of calves here in Fergus county up in the Roy community. You heard that testimony? A. Yes, I did.

"Q. Have you made other prior sales of calves in this community? A. Yes."

We have held that the court and jury may take judicial notice of county boundaries where undisputed testimony tends to establish venue of a crime within a particular county. Chief Justice Adair, speaking for the court in State v. Williams, 122 Mont. 279, 282, 202 P.2d 245, 246 (1949), stated that "the courts of this state will take judicial notice of the boundaries of the various counties as established, fixed and defined by the Codes and of the territorial limits of such political subdivision of the state as such limits are shown and depicted on the official map of the state of Montana. * * * Likewise the jury, as part of the court, may take notice of the general geography of Montana and of the boundaries and limits of the various political subdivisions of the state."

■ Here, the court and jury were at liberty to take judicial notice of the boundaries of Fergus County as established by law, R.C.M.1947, § 16-214, and to consult "appropriate books or documents of reference," R.C.M.1947, § 93-501-1, including the official map of the state, R.C.M.1947, § 19-117. The city of Roy is shown on the official map, as well as the other maps of Montana. Several witnesses testified that appellant's ranch was located eleven miles due east of Roy.

The court and jury could measure the mileage from the Fergus-Petroleum County line, and it is clear that the ranch is within Fergus County. Too, they knew that it was the Fergus County sheriff and his deputies that made the investigation, not the sheriff of Petroleum County. By refusing to recognize that the court and jury were acquainted with the general location of appellant's ranch within Fergus County, we would be ignoring reality.

■ Although this case extends the concept of judicial notice from locations of county seats, State v. Cates, 97 Mont. 173, 33 P.2d 578 (1934), and locations of cities and towns, State v. Williams, 122 Mont. 279, 202 P.2d 245 (1949), to locations of rural areas within a county, we "do not approve of indirect methods of establishing venue in criminal actions where, as here, direct evidence of such fact may be easily obtained." State v. Williams, supra at 282, 202 P.2d at 247. But, under the circumstances of this case, we hold that the above-quoted testimony, supplemented by judicial notice of facts which the court and jury could consider, established the venue of the crime of receiving stolen property at appellant's ranch in Fergus County.

■ The object of a criminal trial is to establish truth—and the just determination of that necessary goal is the responsibility of the triers of fact. Non-prejudicial jurisdictional or procedural misadventures, involving technicalities which do not affect the merits of the cause, cannot substantially alter the ascertainment of truth and the operation of justice. The ulti-

mate disposition of any cause rests on these principles, and should not be a matter of luck or perhaps misadventure of one of the contestants during the course of the trial. State v. Rogers, (Wash.1965), 402 P.2d 501, 502, (1965).

Appellant complains that the court erred in admitting certain testimony and exhibits relating to ownership of the calves on the ground that a proper foundation was not laid connecting the alleged stolen calves with the calves received by appellant from Allen. We find no error. There were no objections to such testimony at the trial and the matter cannot be considered for the first time on appeal. State v. Cates, 97 Mont. 173, 33 P.2d 578 (1934).

Exhibit F was a photograph of a number of calves carrying the $\overline{OU}$ brand, registered to appellant and Johnson. Exhibit G was a closeup photograph of a calf carrying the $\overline{OU}$ brand and the ℲＹ brand, registered to W. D. Rankin. A brief summary of testimony relating to these exhibits establishes that they were properly admitted. The sheriff testified that appellant pointed out the calves he received "from the Indians across the river." These calves were clipped and one was found to be carrying the Rankin brand. They were subsequently seized and taken to the Lewistown stockyards. A stock inspector was also present and accompanied the calves to the stockyards where he immediately telephoned the undersheriff and requested him to photograph the calves. This testimony establishes that the calves taken from appellant's ranch were the same calves shown in the exhibits, and the photographs clearly show the registered brands.

Appellant's next argument concerns several specifications of error involving the issue as to whether an information charging the crime of receiving stolen property must allege ownership of stolen property, or that ownership is unknown. The information filed against appellant charged him as follows: "* * * ROY L. PETERS, is accused by the County Attorney of Fergus County, Montana, by the information, of

the crime of FELONY—Receiving stolen property committed as follows, to-wit:

"That at the County of Fergus, in the State of Montana, on or about the 21st day of SEPTEMBER A. D. 1963, and before the filing of this information the said ROY L. PETERS, did wilfully, wrongfully, unlawfully and feloniously, for his own gain, receive from ARNOLD ALLEN, fifty (50) head of un-branded calves, the said fifty (50) head of calves then and there being stolen property, and the Defendant then and there knowing the same to have been stolen property."

Section 94-6401 et seq. establishes the rules for pleading criminal actions, and include the requirements of an information. Section 94-6403 requires the information to contain a concise statement of the facts constituting the offense, and section 94-6404 provides the proper form. The Code annotations to these sections are replete with decisions which sanction the sufficiency of informations set forth in the language of various criminal statutory offenses. Such informations are valid if they adequately apprise the defendant of the nature of the charged offense so that he may prepare his defense. The information must also accurately describe the offense so that the defendant will be protected against another prosecution for the same crime.

In this case, the information set forth the charge in the language of section 94-2721, which provides: "Every person who for his own gain or to prevent the owner from again possessing his own property buys or receives any personal property, knowing the same to have been stolen, is punishable [for the crime of receiving stolen property]." This court has long recognized that the substantive elements of this offense which must be alleged in the information and established at the trial are: (1) that the property in question was stolen; (2) that the defendant bought it or received it knowing it to have been stolen; and (3) that he did so for his own gain or to prevent the owner from regaining possession of it. State v. Sim, 92

Mont. 541, 16 P.2d 411 (1932). The statute does not require that the fact of ownership of the stolen property, or that ownership is unknown, be alleged in the information. We adopt the rule that it is not necessary to allege ownership, or that ownership is unknown, where the information otherwise describes the stolen goods with sufficient accuracy to apprise appellant to prepare his defense and to protect him from double jeopardy. United States v. Linderman, 20 F.R.D. 459 (Mont.W.D.1957); State v. McGraw, 140 W.Va. 547, 85 S.E.2d 849 (1955); People v. Mitchell, 109 Cal.App. 116, 292 P. 692 (1930).

Appellant argues that the case of State v. Moxley, 41 Mont. 402, 408, 110 P. 83, 85 (1910), compels a contrary view, and that the failure to allege ownership in the information renders it fatally defective. In the Moxley case this court said: "In larceny it is necessary that the charge identify the offense by a description of the things stolen, and their ownership. The name of the owner must be stated, if known. * * * So [also] in charging the offense of receiving stolen property. * * * The reason of the rule is that the transaction may be so identified, that the defendant may, by proper plea, protect himself against another prosecution for the same offense. It follows that the ownership must be proved as charged." However, in State v. Huffman, 89 Mont. 194, 296 P. 789 (1931), this court observed that the information in the Moxley case did not contain a sufficient description of the stolen property, but only alleged the names of its owners. The court further noted that where the property is sufficiently described other than by ownership the Moxley rule is not necessary. In this case we think that the description of the stolen property in the information was sufficient to give appellant notice of the charge filed against him. Appellant cannot claim prejudice because the transcript contains much testimony that appellant knew which calves were referred to in the information. In addition, this result will not cause appellant to be placed in double jeopardy. Cf. State v.

Mercer, 114 Mont. 142, 133 P.2d 358 (1943); and see State v. Rindal, 146 Mont. 64, 404 P.2d 327.

■ Appellant waived his constitutional right against unreasonable search and seizure by consenting to the actions of the state authorities.

The facts of this case clearly establish that appellant voluntarily consented to the investigation and inspection of the calves on his ranch. On March 9, 1964, appellant permitted the sheriff, the deputy sheriff, and two state livestock inspectors to enter his ranch and inspect the calves. Appellant told them that he had bought the calves from some Indians across the river and that he had bills of sale to prove his ownership. Appellant fully cooperated with the investigators and, in fact, assisted them in rounding up and corralling the calves. On March 14, 1964, appellant refused to admit the investigators onto his ranch, because he simply did not want to be bothered at the time. His attorney had advised him that he was within his rights to refuse admission. Two days later, on March 16, 1964, appellant again allowed the investigators to enter the ranch and inspect the calves. On that occasion, appellant helped the authorities clip the calves.

The record shows that appellant fully cooperated with the state authorities. Such cooperation must be considered a voluntary consent to the search and seizure of the calves. Thus, the Montana Constitutional provision against unreasonable search and seizure was not violated (Article III, § 7); Petition of Watson, 144 Mont. 576, 398 P.2d 949 (1965); Petition of McGrath, 143 Mont. 397, 390 P.2d 452 (1965); State v. Nelson, 130 Mont. 466, 304 P.2d 1110 (1956); State ex rel Muzzy v. Uotila, 71 Mont. 351, 229 P. 724 (1924); State v. Fuller, 34 Mont. 12, 85 P. 369 (1906). There was no infringement of the Fourth Amendment to the United States Constitution, which secures immunity from unreasonable search and seizure by state authorities under the Fourteenth Amendment. (See Mapp

v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).)

In a recent case, Judge Browning, of the Ninth Circuit Court of Appeals, considered the question of consent and waiver of the constitutional right against unreasonable search and seizure in Cipres v. United States, 343 F.2d 95, 97, (1965). He said: "Waiver, in this context, means the 'intentional relinquishment of a known right or privilege.' [Citation omitted] Such a waiver cannot be conclusively presumed from a verbal expression of assent. The court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld * * *. The crucial question is whether the citizen truly consented to the search * * *." The Ninth Circuit held that although police officers testified that Cipres had verbally consented to their search, that fact, standing alone, did not establish waiver. The consent to search was obtained "under color of the badge." Cipres protested her innocence, told the officers that her luggage contained harmless articles and the key was unavailable, and asked if they had a search warrant. These circumstances tended to show that defendant's "assent may have reflected less than a free, deliberate, and unequivocal decision" to permit the search. In Application of Tomich, 221 F.Supp. 500 (9th Cir. 1964), the Ninth Circuit also held that verbal consent did not constitute waiver of an unreasonable search and seizure. However, both of these cases are distinguishable from the instant case.

The Cipres and Tomich cases both involved possession of contraband property. Cipres, who had been seen with a known criminal, protested that the key to a suitcase was unavailable, (It contained narcotics.); and Tomich, a known criminal, protested that he did not have the key to his automobile trunk. (It contained burglar tools and narcotics.) The respective defendants reluctantly consented to the search, but told the

police officers that they did not have the means to accomplish it. They knew that their complete cooperation would result in the discovery of the contraband. But they also knew that if they strongly protested the search they would arouse police suspicions. Thus, they equivocally consented, seeking to give the impression that they had nothing to hide, and putting off or bluffing the police by causing them the inconvenience of independently obtaining access to property. However, in each case the defendant lied, for Cipres' suitcase was unlocked and Tomich's key was in his shoe. Such limited and equivocal consent, although prompted by a fear of the discovery of contraband, was not held to be effective waiver by the Ninth Circuit.

While we may not agree with that court's interpretation, in this respect, yet in this case, appellant's consent to the search was uncoerced, unconditional, and unequivocal. Coercion, if any, resulting from appellant's mere confrontation with the state authorities was not present to the same extent as in Cipres or Tomich. Possession of the calves was not illegal in itself, and appellant was confident that he had persuasive evidence of ownership and that the inspection would not reveal his crime. On two occasions, appellant voluntarily cooperated with the state authorities, and gave them unconditional permission to conduct the inspection. A few days prior to the latter instance, appellant's attorney had apprised him of his right to prohibit entry—and he had done so. Thus, when he allowed the search on March 16, 1964, there was an "intentional relinquishment of a known right," which must be considered a conscious waiver of the Fourth Amendment. In addition to appellant's verbal consent, he actively participated in the investigation.

We therefore hold that under the facts and circumstances of this case, appellant's verbal consent and active cooperation "reflected an understanding, uncoerced, and unequivocal election to grant [the authorities] a license which he knew could be freely and effectively withheld." Furthermore, a careful review of the transcript reveals that appellant did not object to the

search and seizure of the calves either before or during the trial. Appellant's trial counsel was fully aware of these facts, and appellant does not allege that his trial counsel was incompetent in failing to move for the suppression of evidence obtained by the search and seizure.

There is no merit in appellant's assertion that the court erred in refusing to give appellant's offered Instruction No. 15, pertaining to facts and circumstances which the jury should consider in reaching its verdict. Contrary to the statement in appellant's brief, the court did instruct the jury that "Mere possession of stolen property is not a criminal offense." That correct statement of law was covered by Instruction 13. The court also gave sufficient instructions relating to intent. The substantive elements of the crime of receiving stolen property were set forth in Instructions No. 4 and No. 12.

Appellant assigns further error in the contentions that the court failed to instruct the jury on the law concerning impeachment of witnesses by prior contradictory statements, and on the law concerning testimony of an accomplice. Trial counsel have an affirmative duty to present offered instructions to the court. R.C.M.1947, § 94-7201. Where no instructions are offered, the questions cannot be raised for the first time on appeal. See State v. Porter, 125Mont. 503, 242 P.2d 984 (1952), and cases cited therein.

Appellant's contention that the court erred in permitting State's Exhibits B, C, D, E, F, and G to go to the jury is likewise without merit. Exhibit B was admitted without objection, and although it related to the second count of the information which was dismissed, no motion was made for removal nor was it prejudicial for the count had been dismissed. Exhibit C was properly admitted over appellant's objection. Appellant did not object to the admission of Exhibits D and E, and objections cannot be raised for the first time on appeal. The proper admission into evidence of Exhibits F and G is discussed above.

Appellant set forth other specifications of error in his brief which were not argued. We find them without merit and do not consider them prejudicial to the substantive rights of the appellant.

Appellant's motion for a new trial was properly denied and the verdict of the jury will not be disturbed.

Judgment affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE ADAIR concur.

MR. JUSTICE CASTLES:
I concur in the result, but not in all that is said therein.