**STATE of Maine**

v.

**George A. FERNALD, Jr.**

Supreme Judicial Court of Maine.

Dec. 19, 1968.

John N. Kelly, Asst. Atty. Gen., Augusta, for plaintiff.

Joseph B. Pellicani, Rockland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal.

On the morning of August 12, 1965, Jurgen Boerner, the night clerk at the Marion Village Motel in Rockport, was found dead. Examination disclosed that he had died as a result of three gunshot wounds. The office showed signs of having been ransacked and a quantity of money was apparently missing from the cash register.

The defendant, a young man of eighteen who lived in Camden, had been employed at the Motel and about a week before the death of Boerner the defendant had stopped working and was heard in a bitter altercation with Boerner over money which the defendant claimed was due him for wages. The defendant threatened to come back later after the money and Boerner answered "You will over my dead body."

It was determined that the deceased had been killed by .38 caliber full patch military type bullets, which may be fired from either .38 special or .357 magnum revolvers. It was learned that in May of that year defendant had in his possession a .357 magnum revolver with which he had been target shooting in a gravel pit. On August 16th officers removed a .38 caliber full patch military bullet from the sand behind the log at which defendant had been shooting. During the early morning of August 17th Lt. Jordan, a ballistic expert, examined this bullet and determined that it had been fired from the same gun that fired the bullets which caused Boerner's death.

Later that morning the officers went to defendant's parents' home in Camden where defendant also lived with a search warrant empowering them to search the premises for a .357 magnum revolver. Mr. Fernald, defendant's father, joined them there, invited them into the house and took them into various rooms, including defendant's bedroom, and then out onto the grounds. At about 11:00 A.M., while some of the officers continued to search the grounds, two officers drove Mr. Fernald, Senior, to the public library. Mr. Fernald went into the library alone and came out with the defendant and both rode back to the Fernald home in the police car. The car was parked in front of the Fernald home and one of the officers explained to defendant that he was not required to answer any of the officer's questions and that anything he said could be used against him. He was also told that he had the right to the assistance of an attorney and to make an immediate phone call. The officer told defendant he was under arrest on charges of robbery and the murder of Boerner. The officers questioned defendant in the car intermittently for two hours beginning at 11:30 A.M. Some of this time the defendant's parents were in the car with the defendant or standing outside talking with him through the car window. His father remained in the car with him the first forty-five minutes. The defendant at first denied involvement in the crimes. The officers then took defendant to the county jail in Rockland where they booked defendant and then after repeating their explanation of his rights and offering him

the use of the telephone, they resumed questioning him. Other officers continued the search at the Fernald residence and in a very short time one of them found hidden in an old automobile tire which outlined a shrubbery plot a plastic bag containing $236.00.

Just before four o'clock that afternoon the defendant orally told the Sheriff the details of his shooting Boerner. Defendant then took the officers to the Megunticook River and pointed out the spot where he had sunk the gun with which he had killed Boerner and the sneakers he had worn at the time. The officers later recovered these articles. The defendant returned to the jail where he repeated his confession and signed a typewritten inculpatory statement which a stenographer had prepared from shorthand notes of his verbal admissions.

An indictment charging defendant with murder was returned by the Grand Jury of Knox County and after trial before a jury in May of 1966 he was found guilty of murder. He entered an appeal which brings the matter before us.

The defendant designated numerous points on appeal. We will examine in order those which have been argued before us. Although we consider the others to have been abandoned (State v. Sutkus, 134 Me. 100, 182 A. 15 (1935)) we have examined them and find them to be without merit.

*Failure of the Presiding Justice to order all witnesses sequestered.*

The defendant's first assignment of error is that although all other State's witnesses were ordered sequestered during the trial, Miss Pearl Borgerson, who testified for the State, was permitted to remain in the courtroom where she performed her official duties as Clerk of Courts during the trial.

At the outset of the trial, counsel for the defense moved that all prospective witnesses for the State be ordered sequestered. The Court granted the motion except as it would apply to Miss Pearl Borgerson, the Clerk of Courts. It is not disputed that Miss Borgerson remained in the courtroom during the trial performing her official duties and, when called to the stand, she testified to the circumstances surrounding the defendant's making the written confession which Miss Borgerson had taken in shorthand and reduced to typewritten form.

■ The rule in this State concerning sequestration of witnesses was stated by our Court in State v. Cox, 138 Me. 151, 178, 23 A.2d 634, 647 (1941).

"In this state there is no statute or rule of court requiring the presiding justice, on motion, to segregate the witnesses during the trial. Whether or not the witnesses should be segregated in a given case, rests in the sound discretion of the court, to whose ruling an exception will not lie unless it appears that there has been an abuse of discretion."

See also State v. McKrackern, 141 Me. 194, 208, 41 A.2d 817, 32 A.L.R.2d 360 (1945); We follow what appears to be the majority rule. 53 Am.Jur., Trial, Secs. 31, 32; 24 C.J.S. Criminal Law § 1439, page 48.

■ The defendant's motion for sequestration of witnesses was granted but with Miss Borgerson specifically excluded. As the granting or denying of the motion to sequester all witnesses is subject to the sound judicial discretion of the Presiding Justice, so is the decision whether or not to exclude one witness from such an order. It was within the Justice's discretion to determine whether or not the Clerk's official services in the courtroom were so required as to justify her being excepted from his order in view of the nature of the testimony to be given by her. We find no abuse of this discretion.

*Defendant's right to be present during all proceedings.*

The defendant contends that he was denied the right to be present at all times during his trial.

Rule 43, M.R.Crim.P. provides that:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury, and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. * * * "

This claim by defendant is two-fold. First, he contends that he was not present at the view when the jury observed the locus of the crime or in the courtroom when the jury returned for additional instructions from the Court. These issues were not raised at trial and would not be considered by us on appeal except that they allege basic, serious and fundamental defects. State v. Smith, 140 Me. 255, 37 A. 2d 246 (1944).

This jurisdiction has for many years held that the purpose of a jury view in a criminal case is not to receive evidence but to enable the jury more intelligently to apply and comprehend the testimony presented in court. The view is not a part of the trial and we have held that neither our statutes nor the common law require the defendant's presence. State v. Slorah, 118 Me. 203, 106 A. 768, 4 A.L.R. 1256 (1919). The defendant has no constitutional right under Due Process to be present at a jury view. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575 (1934). However, the practice in this State is for the defendant to be present at the view unless he chooses not to do so.

On the other hand, Rule 43 makes necessary the defendant's presence during instructions to the jury, unless he effectively waives the right. 21 Am.Jur.2d Criminal Law, Section 299.

The only support which the defendant presents for these contentions is the fact that the record does not state whether the defendant was or was not present either at the view or during the supplemental instructions. If in fact the defendant was absent at any point during the trial he could have called that fact to the attention of the Justice. He was represented by competent and experienced counsel (whose services he specifically sought to retain as late as a year following trial) and who never at any time by motion or otherwise suggested on the record his client's absence during any part of the trial. We find that the record does not affirmatively recite the defendant's presence when Court convened after any of the numerous recesses and adjournments, yet at different times during trial several witnesses identified him as being present, the Justice addressed him personally on three different occasions and the defendant took the stand once to testify.

It is presumed that the procedure of a court of general jurisdiction has been regular and proper. State v. Peloquin, 106 Me. 358, 76 A. 888 (1910); Darlington v. State, 153 Neb. 274, 44 N.W.2d 468, 469 (1950). In testing the correctness of defendant's trial on appeal, we presume the presence of the defendant throughout the trial unless the record indicates otherwise.

Defendant's other contention as to this issue is that during the trial there occurred numerous bench or side-bar conferences in which defendant did not participate. Defendant argues that this violated his constitutional rights under the Due Process clause of the Fourteenth Amendment.

We start with the principle expressed by Justice Cardozo in Snyder v. Massachusetts, supra, that the defendant charged with a felony has "the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against

the charge." There is no privilege, this opinion stated, to be present when

"* * * presence would be useless or the benefit but a shadow. * * * So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."

This principle is embodied in our statute and rule. Neither was intended to do away with the familiar procedural device of bench conference. Experience in this jurisdiction has proven the bench conference to be an invaluable tool to enable the presiding justice to expedite and protect trial procedure and avoid the jurors' hearing facts from which they might be prejudiced. It is a practical necessity in situations where the Presiding Justice, faced with making a ruling on a question to which objection has been made, needs to know the substance of the expected answer and counsels' positions on it in order to avoid admitting prejudicial testimony. Bench conferences frequently enable the Court to receive these arguments outside of the jury's hearing but without the time consuming process of taking the jury from the courtroom.

We have examined the record as to the bench conferences of which defendant complains. No prejudice to defendant is apparent from any of them and in most instances it would appear that defendant's position had benefited from the conferences.

We approve of the increasing use of the court reporter at the bench to record side-bar conferences for the reason that this avoids possible later misunderstandings and disputes as to the positions stated by counsel there.

However, the handling of procedural details at the bench must necessarily and properly be left in the hands of counsel. There is no reason to believe that the defendant could have assisted his counsel at these conferences or that his absence in any way denied him the substance of a fair trial. We find that other courts, in dealing with instances involving the non-attendance of the defendant at side-bar conferences or at arguments on issues of law in the jury's absence have generally found that the defendant was not thus deprived of any right. People ex rel. Lupo v. Fay, 13 N.Y.2d 253, 246 N.Y.S.2d 399, 196 N.E.2d 56 (1963); United States v. Johnson, 3 Cir., 129 F.2d 954, 144 A.L.R. 182, affd. 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); State v. Peters, 146 Mont. 188, 405 P.2d 642 (1965); Cox v. United States, 8th Cir., 309 F.2d 614 (1962); Taylor v. United States, 8th Cir., 385 F.2d 835 (1968); Kugzruk v. State, Alaska, 436 P.2d 962 (1968); People v. Teitelbaum, 163 Cal.App.2d 184, 329 P.2d 157 (1958).

*Refusal of the Presiding Justice to allow defendant to withdraw his plea of not guilty by reason of insanity.*

As early as August 25, 1965, defendant, through his counsel, had indicated his expectation that he would plead "not guilty" and "not guilty by reason of insanity" and had requested that he be committed to the custody of the Commissioner of Mental Health and Corrections for study of his mental condition. This was done. On being arraigned in February of 1966 defendant pled not guilty and not guilty by reason of insanity. This fact was properly made known to the jury by the Justice in his preliminary instructions when trial commenced on May 23, 1966.

After completion of the State's case the defendant personally addressed the Court in the jury's absence and informed the Court that he then wished to withdraw his plea of not guilty by reason of insanity. The Presiding Justice inquired of defendant's senior counsel whether the attorney recommended that the defendant should be permitted to withdraw that part of his plea. The attorney recommended to the Justice that this plea should not be withdrawn and

the Justice denied defendant's request. Considerable evidence as to this issue was then presented to the jury by defense witnesses and the issue was argued forcefully by defense counsel. Defendant now contends that the denial by the Justice of defendant's request to withdraw his plea of not guilty by reason of insanity was error.

This jurisdiction follows the majority rule that a defendant who has entered a plea to a criminal charge has no right to withdraw that plea in order to enter another plea. The withdrawal of a plea rests in the sound discretion of the Presiding Justice. State v. Wing, 150 Me. 290, 110 A.2d 597 (1954); State v. Douglas, 150 Me. 442, 114 A.2d 253 (1955); State v. Powers, 239 Iowa 430, 30 N.W.2d 476 (1948); Commonwealth v. Tucker, 189 Mass. 457, 76 N.E. 127, 7 L.R.A.,N.S., 1056 (1905); State v. Henspeter, 199 Minn. 359, 271 N.W. 700 (1937); 21 Am.Jur.2d, Criminal Law, Sections 503, 508; 22 C.J.S. Criminal Law § 421(2), (7).

Our procedure recognizes four pleas on arraignment in criminal matters— not guilty, guilty, not guilty by reason of insanity and nolo contendere.

The relevant portion of M.R.Crim.P., Rule 11 reads:

"A defendant may plead not guilty, not guilty by reason of insanity, guilty, or, with the consent of the court, *nolo contendere*. A defendant may plead both not guilty and not guilty by reason of insanity to the same charge. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* in any felony proceeding without first (a) making such inquiry as may satisfy it that the defendant in fact committed the crime charged, and (b) addressing the defendant personally and determining that the plea is made voluntarily with under-

standing of the nature of the charge. * * *"

Rule 11 recognizes a defendant's long established privilege to enter pleas of not guilty and not guilty by reason of insanity at arraignment as a matter of right. There is, however, no absolute right to enter pleas of guilty or nolo contendere in felony cases. Such pleas may be allowed only with the Court's approval and after the Court has made such inquiry as satisfies it that the defendant in fact committed the crime charged and has determined that the plea is voluntary. M.R. Crim.P., Rule 11. Jenness v. State, 144 Me. 40, 64 A.2d 184 (1949); State v. Siddall, 103 Me. 144, 68 A. 634 (1907).

Unstated but necessarily present in Rule 11 is the principle that a defendant has no absolute right to withdraw a plea of *not guilty* in order to enter a plea of either guilty or nolo contendere unless the Presiding Justice in the exercise of his discretion permits it. The rule places upon the Court the heavy responsibility of protecting a defendant as far as possible from suffering injustice as a result of his own impetuousness, dispair or lack of understanding. Glassman, Maine Practice, 11.1. It appears to us that a Justice has the same responsibility to a defendant who has entered a plea of *not guilty by reason of insanity*. People v. Merkouris, 46 Cal. 2d 540, 297 P.2d 999 (1956). A withdrawal of the plea would bar the defendant's witnesses from presenting and the jury from considering any testimony tending to absolve the defendant from criminal responsibility because of his mental condition. In leaving the plea standing, the Justice permitted the introduction of testimony by defendant on this issue, while at the same time leaving defense counsel free to withdraw the issue from the jury's consideration during argument in the event the expected evidence failed to develop.

The Justice was called upon to decide whether the defendant's desire to withdraw

his plea of not guilty by reason of insanity might result in the conviction of crime of a person whose mental condition should absolve him of criminal responsibility.

The defendant was a boy of eighteen, presumably with an understanding of the tactical moves of trial defense and of the medical and legal aspects of his witnesses' proposed testimony unequal to that of his experienced counsel who had represented him for a year before trial commenced. The Justice had observed defendant during trial. A psychiatrist at the State Hospital had reported to the Court on his observation of the defendant and while we do not have the doctor's report in evidence, it is apparent from the doctor's testimony that it showed that the defendant had a history of unusual conduct, had required psychiatric care previous to the murder and that an electroencephalogram had showed a mildly abnormal tracing. Defendant's counsel was doubtless aware of the nature of the testimony as to defendant's mental condition which could be expected from defendant's witnesses, and which the Justice could hardly expect him to disclose to the Justice and the State in advance. Counsel was in a position to evaluate the effects of the action which defendant proposed to take so late in the trial. He made clear to the Justice his earnest belief that defendant should have the opportunity to present evidence as to his mental condition. The Justice could not surrender his responsibility to the defendant's senior counsel but that counsel was an officer of the Court and the Justice was entitled to consider counsel's judgment along with his own evaluation of the situation. Furthermore, the Justice could realize that if, as defendant argues, any strategic disadvantage had resulted from defendant's claiming lack of criminal responsibility because of his mental condition it must have already taken place when the jury had been informed of his plea before trial. The Justice met his responsibility and we find no abuse of his discretion.

*Defendant's motion to amend his motion for new trial.*

On June 2, 1966, some six days after his conviction, defendant filed a motion for a new trial setting forth six grounds. A hearing was had on this motion and on June 7, 1966, the motion was denied. On April 21, 1967, the defendant filed a motion asking to be allowed to amend his original motion—which had been denied almost a year before—by adding nine paragraphs alleging many additional grounds, most of which were, substantially, raised by his statement of Points on Appeal. M.R.Crim.P., Rule 33 was in effect at that time and controls. It reads, in pertinent part:

"A motion for a new trial based on any other ground [than newly discovered evidence] shall be made within ten days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period."

Defendant does not allege that his motion is based upon newly discovered evidence. It was filed many months after the expiration of ten days and after the power of the Superior Court to grant it had expired. United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), rehearing denied, 332 U.S. 784, 68 S.Ct. 28, 92 L.Ed. 368; Glassman Maine Practice, Section 33.2. Defendant's attempt to give his new motion vitality by labeling it a motion to amend a previous motion which had been heard and denied must fail. It was, in fact, an entirely new motion filed long after the Court's power to grant it had ended.

*The Court's failure to grant defendant's motion to suppress evidence.*

Defendant filed a motion asking in general language to suppress all evidence obtained as a result of the alleged illegal search of defendant's father's house and the alleged illegal arrest of defendant for

numerous stated reasons. On being requested to do so, at the beginning of the hearing, defendant specified the articles which he wished suppressed and returned as being 1) a confession, 2) $236.00 in money, 3) letters bearing a certain name, and 4) an additional sum of $140.00. Hearing was had in advance of trial and the Justice denied defendant's motions except as to the letters which were ordered suppressed and returned to him.

After the hearing on the motion had been in progress a considerable period of time defendant's counsel asked to amend his motion to include a .357 magnum revolver (with which the evidence later showed Boerner had been killed), a pair of white sneakers, a pair of "blood stained trousers", and two other items which are not later referred to in evidence. The Justice refused to allow amendment of the motion at that time and said that if defendant wished to renew his motion at trial he would consider the items at that time. The refusal of the Justice to permit amendment did not, as the Justice made clear, preclude the defendant from seeking to exclude the items when they were later offered at trial. The gun was offered by the State as an exhibit during trial and was admitted when defendant's counsel stated that the defendant did not object to its admission. This statement by defendant's counsel waived any objection defendant may have had to the Justice's earlier action.

The money which the Justice refused to suppress was also later admitted at trial when defendant's counsel stated that he had no objection, thus similarly removing the necessity of our further consideration of it. The sneakers and trousers which were taken from defendant's home were not referred to in testimony except by defendant himself who testified on the motion to suppress that the police told him they had seized them.

Particularly, the defendant contends that the confession was obtained by the police as a result of coercion and in violation of his rights under the Fifth Amendment to the Constitution of the United States and should have been suppressed.

We are presented with an unusual situation as to the confession. Defendant unsuccessfully moved to suppress it. When it was offered at trial defendant's counsel objected to its admission. But during his argument, defendant's counsel told the jury that the defendant made no issue of voluntariness of the confession.

We will examine the evidence to determine whether the Justice was clearly in error in refusing to suppress defendant's confession in view of defendant's contention that it was obtained from him through coercion. The defendant is protected from self incrimination if " * * * the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined * * *." Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760, 768 (1961).

Trial took place before the decision of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 1054 (1966), and the specific controlling requirements of warnings and explanations as to right to silence and to counsel were those stated in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). There was credible evidence presented to the Justice that before questioning the defendant the officers had informed the defendant that he was under arrest on charges of murder and robbery and that in his father's presence he had been told of his constitutional right to remain silent, of his right and opportunity to consult with an attorney and that anything he said could be used against him. The father and son had considered calling an attorney for him and apparently decided against it. The evidence amply supported a conclusion that the requirements of Escobedo had been met. In testing the voluntariness of his confession we view the conduct of the police in

questioning him in the light of the defendant's age, education, health, experience and intelligence and the seriousness of the charges.

■ The testimony portrays a somewhat intermittent questioning by the officers. The first part stated about 11:30 A.M. in an automobile in front of the defendant's home in Camden, much of it in the presence of one or both of defendant's parents, and continued until shortly before 1:30 P.M. He was then taken to the jail in Rockland where after being booked he was further questioned until shortly before 4:00 P.M. when he gave the officers an oral account of his commission of the murder. The Presiding Justice, who had heard and observed the witnesses, rejected defendant's claim that the confession was the product of coercion. The evidence shows that while the defendant sat in front of his house, the officers were already searching the lawn where, shortly after he left, they discovered the money taken during the crime which defendant had hidden in a clump of flowers. He had been told by the officers that they had already found spent bullets from a gravel pit which had been fired from his .357 magnum revolver and he doubtless was aware of his danger from ballistic comparison with those which had killed Boerner. Although the questioning continued, with interruptions, some four and one-half hours during which time defendant was given no lunch it does not appear that it was of such a nature or so prolonged as to override the will of the defendant. On the other hand, defendant must have come to the realization that the investigation by the police was producing evidence which must inevitably demonstrate his guilt and that cooperation with the officers now presented his most promising course of conduct.

■ Defendant also argues to us that defendant's confession was obtained partly as a result of an illegal arrest. The evidence strongly refutes this. At the time the officers had placed defendant under arrest they had information that he had formerly worked at the Marion Village Motel, that he had recently quarrelled with the deceased, that trousers that appeared to have blood stains were found in his room and that ballistic tests had demonstrated that his gun had fired the fatal shots. There was sufficient evidence to establish reasonable grounds for the belief that defendant had committed the crimes. State v. Warner, Me., 237 A.2d 150, 169 (1967); Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 552, 39 A.L.R. 790 (1925).

Defendant chose to have the preliminary determination of the voluntariness of the confession in the jury's absence made at the hearing on his motion to suppress and this was done. The constitutional requirements set forth in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) were satisfied. His counsel, apparently for strategic purposes, waived in argument the later determination of its voluntariness by the jury which our own procedure provides. State v. Robbins, 135 Me. 121, 190 A. 630 (1937).

■ The rulings of the Justice while sitting as a Single Justice on motion for suppression of evidence in which issues of fact were determined by him are not ordinarily to be set aside unless clearly erroneous. State v. MacKenzie, 161 Me. 123, 210 A.2d 24 (1965).

■ The denial by the Justice of defendant's motion to suppress the confession was not clearly erroneous. However, when the voluntary nature of a confession is disputed on federal constitutional grounds it is our duty to examine the entire record and make an independent determination of the ultimate issue of voluntariness. Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Harris v. State, 244 Ark. 314, 425 S.W.2d 293 (1968). We have examined the entire record with care and it is our own deter-

mination that the defendant's confession was voluntarily given.

 His refusal to permit amendment of the motion to suppress during the hearing was a matter for his sound discretion and we find no abuse. 41 Am.Jur., Pleading, Section 293; Hayford v. Everett, 68 Me. 505 (1878). Neither do we find prejudice to defendant. The only article included in the motion to amend which was offered in evidence or referred to in testimony was the gun which was admitted without objection.

The record in this case shows a trial in which defendant was vigorously defended and his rights carefully respected and in which his guilt was demonstrated beyond any reasonable doubt.

Appeal denied.